**Jose A. ORTEGA and Rene Ortega as individuals and d/b/a Ortega Farms, A Partnership, Appellants,**

v.

**CITY NATIONAL BANK, Appellee.**

No. 13–00–064–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Jan. 23, 2003.

Fabian Guerrero, Edinburg, for Appellants.

Lance Alan Kirby, Robert L. Galligan, Jones, Galligan, Key & Lozano, for Appellee.

Before Justices HINOJOSA, CASTILLO, and AMIDEI[1].

Opinion by Justice CASTILLO.

We grant appellee's motion for rehearing, withdraw our opinion issued August 31, 2001, and substitute the following in its place.

Jose and Rene Ortega ("the Ortegas")[2] sought financing for their farming operations from City National Bank ("the Bank"). When the bank refused to extend a line of credit over and above that already extended, the Ortegas sued. The summary judgment from which this appeal arises granted a take-nothing judgment against appellants and judgment in favor of the Bank on its counterclaim for judicial foreclosure of its security interest on each of three notes. The summary judgment awarded the Bank liquidated damages in the amount of $302,637.78. Appellants assert the trial court erred in granting summary judgment against their claims of breach of contract, negligence, and fraud. We affirm.

## FACTUAL BACKGROUND

In May of 1995, the Bank loaned the Ortegas $93,800 for the 1996 crop year. A guarantee of the loan was provided by the Farm Service Agency (the "FSA").[3] The Ortegas made no payment on the loan. Despite the non-payment of the 1995 loan, in January of 1996, the Bank made another loan to the Ortegas for $115,000.00. This loan was also guaranteed by the FSA and provided that "this promissory note will be used for three consecutive crop years, with [the] second and third years being advanced only aftger [sic] preceding crop year[']s advance has been paid in full." That same month, the Bank restructured the 1995 loan as a five-year amortization with a three-year balloon. The Ortegas failed to repay the entire amounts due for the 1995 and 1996 loans, although they did receive some crop insurance proceeds which were turned over to the Bank. In August of 1996, a vice president of the Bank applied part of a $49,000 insurance check to the 1995 debt and part to the 1996 line-of-credit debt.[4] Another insurance check was applied to the 1996 line-of-credit debt. Needing money to secure a lease agreement on 300 acres of land used for their farming operations, the Ortegas requested financing from the Bank for the 1997 crop year. In September of 1996, the Bank notified the Ortegas by letter that, at that time, it was denying a request for a non-FSA guaranteed direct line of credit from the bank, due to drought conditions in the Rio Grande Valley and the uncertainty of the availability of sufficient water. In December of 1996, FSA informed the Ortegas that the 1997 advance on the FSA-guaranteed line of credit could not be extended because the Ortegas did not meet the necessary debt-credit ratio required to secure an FSA guarantee. The Bank then reversed the application of the August insurance proceeds to the 1995 loan, applied those funds to the 1996 line of credit, and pushed back the due date on the 1995 loan. These actions altered the

---

**1.** Former Justice Maurice Amidei assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

**2.** Below, the Ortegas sued individually and d/b/a Ortega Farms, a Partnership.

**3.** Known at the time of the contract as the Farmer's Home Administration, or FmHA,

the Farm Service Agency is a federal governmental agency which administers numerous federal farm programs for the United States Department of Agriculture.

**4.** There is a dispute as to whether the Ortegas agreed to this particular distribution.

Ortegas' debt-credit ratios sufficiently to allow them to qualify for a FSA guarantee of a 1997 line of credit.

In May of 1997, the Ortegas sued the Bank, claiming that the Bank's initial application of a portion of the insurance funds toward the 1995 debt, rather than the 1996 line of credit, directly caused the FSA's rejection of the loan renewal package in late 1996 and Ortega's subsequent loss of the ability to lease the 300 acres that they had been unable to secure. The Ortegas alleged breach of contract, breach of the duty of good faith, negligence, and fraud under the Deceptive Trade Practices Act.[5] The Bank filed a counterclaim for judicial foreclosure on all outstanding notes which the Ortegas owed the Bank.

## PROCEDURAL BACKGROUND

On March 26, 1999, the Bank filed a traditional motion for summary judgment against claims alleged in the Ortegas' first amended petition. The Ortegas subsequently amended their petition, filing "Plaintiff's Third Amended Petition for Breach of Express Contract and Fraud" which replaced its breach of contract claim with a third-party beneficiary action for breach of contract and dropped the DTPA claims, replacing them with common-law fraud claims.[6] The Bank then filed a "Motion for Summary Judgment Reply" on May 3, 1999, noting that new causes of action had been filed but suggesting that the trial court grant a partial summary judgment on the issues previously raised in the Ortegas' prior petition. The Ortegas filed a response alleging that the existing motion for summary judgment was inapplicable to the pleadings before the court because of the amended petition and therefore should be denied in whole. In response, on July 29, 1999, the Bank filed a supplemental motion for summary judgment, seeking a summary judgment on traditional grounds against all the claims alleged in the Ortegas' third amended original petition, in which the Ortegas pled for recovery as a third-party beneficiary of the contract between the Bank and the Farm Service Agency, negligence, breach of the duty of good faith and fair dealing, and fraud. The Bank also alleged a "no-evidence" ground in the alternative as to the Ortegas' fraud claim.

On August 6, 1999, prior to the submission date for the supplemental motion for summary judgment, the Ortegas once again amended their petition and added an additional cause of action for civil conspiracy. In their August 16, 1999 response to the Bank's pending motion, the Ortegas provided notice that they had filed an amended petition and specially excepted to the supplemental motion for summary judgment on the grounds that "therefore the Defendant's motion is inapplicable with regard to those theories which are insufficiently described by the defendant." In the subsequent paragraph of the response, the Ortegas provided notice of the newly alleged civil conspiracy cause of action. The Bank filed a reply to the Ortegas' response but did not address the issue of the new cause of action or file any additional supplemental motions for summary judgment.

## THE TRIAL COURT'S FINDINGS

In the summary judgment order, the trial court acknowledged the filing of the fourth amended original petition, finding that it "included essentially the same alle-

---

5. Tex. Bus. & Com.Code Ann. § 17.46(b)(Vernon 2002).

6. There is no mention of a second amended petition having been filed by the Ortegas in either parties' briefs, and such a petition does not appear in the record before us.

gations as in their third amended petition." The trial court further found that the Bank's supplemental summary judgment motion "addressed all of the Ortegas' affirmative claims for relief appearing in their fourth amended petition." The trial court granted summary judgment against all of the plaintiffs' claims raised in the fourth amended petition.

## JURISDICTION

■■■ Before we reach the merits of this case, we must first determine whether we have jurisdiction over this appeal. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Because the question of jurisdiction is a legal question, we follow the *de novo* standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Jurisdiction of a court is never presumed and, if the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *El–Kareh v. Tex. Alcoholic Beverage Comm'n*, 874 S.W.2d 192, 194 (Tex.App.-Houston [14th Dist.] 1994, no writ). As appeals are only allowed from final orders or judgments, we must first consider whether an order purporting to grant a summary judgment can be final and appealable when one of the plaintiff's causes of actions was not addressed by the defendant in the motion for summary judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001); *Liu v. Yang*, 69 S.W.3d 225, 227 (Tex.App.-Corpus Christi 2001, no pet.). We have recently decided this question in the negative. *Liu*, 69 S.W.3d at 228–29.

However, the judgment in the present case, unlike that in *Liu*, did purport to address all of plaintiffs' claims, even those not specifically pled in the motion for summary judgment, and, in accordance with the same, ordered that the plaintiffs' take nothing on their suit. As the trial court purported to rule on all claims in the plaintiff's fourth amended petition, we find that the summary judgment order was final. *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex.2002); *see also Lehmann*, 39 S.W.3d at 200. We therefore have jurisdiction to determine this cause.

The trial court granted summary judgment against all five of the Ortegas' claims in their fourth amended petition: breach of contract, breach of duty of good faith and fair dealing, negligence, fraud, and civil conspiracy. On appeal, the Ortegas complain only of the trial court's rulings on their breach of contract, negligence, and fraud claims. Accordingly, we will now consider whether the trial court erred in granting summary judgment against the appellants on their breach of contract, negligence, and fraud claims.

## STANDARD OF REVIEW

The function of summary judgment is not to deprive litigants of the right to a trial by jury, but to eliminate patently unmeritorious claims and defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex.1979); *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). On appeal, the proper standard of review for the grant of a motion for summary judgment is determined by whether the motion was granted on traditional or "no-evidence" grounds. The determination of the nature of the motion for summary judgment is critical, as the difference in relative burdens between the parties in the two types of summary judgments is significant. *See Michael v. Dyke*, 41 S.W.3d 746, 750–52 (Tex.App.-Corpus Christi 2001, no pet.)

■■■ We review the grant of a traditional summary judgment *de novo*. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.-Corpus Christi 2002, no pet.). In a traditional motion for summary judgment,

the movant has the burden of showing both that there is no genuine issue of material fact and entitlement to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Swilley*, 488 S.W.2d at 67. In deciding whether there is a genuine issue of material fact, evidence favorable to the non-movant will be taken as true, and all reasonable inferences made, and all doubts resolved, in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id.* The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Swilley*, 488 S.W.2d at 68.

A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). If the nonmovant produces evidence to raise a genuine issue of material fact, summary judgment is improper. Tex.R. Civ. P. 166a(i). All that is required of the nonmovant is to produce a scintilla of probative evidence to raise a genuine issue of material fact. *Zapata*, 997 S.W.2d at 747. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Id.* (citing *Moore v. K*

*Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied)(quoting *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex.1983))). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion. Tex.R. Civ. P. 166a(i).

In the present case, the trial court did not specify the grounds on which the summary judgment was granted. If a summary judgment order issued by the trial court does not specify the ground or grounds relied upon for a ruling, the ruling will be upheld if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999); *Weakly v. East*, 900 S.W.2d 755, 758 (Tex.App.-Corpus Christi 1995, writ denied). As the trial court granted summary judgment as to each of appellants' claims, we will thus consider the grounds alleged in the summary judgment motion as to each claim complained of on appeal and affirm if any are sufficient to sustain the trial court's ruling as to that claim. Since "traditional" grounds were asserted as to each claim, and "no-evidence" grounds were asserted only as an alternative ground as to a single claim, we will first review the grant of the summary judgment under traditional summary judgment standards and only consider the "no-evidence" ground if the issues are not disposed of by the former review.

## BREACH OF CONTRACT CLAIM

In their first issue, appellants argue that they were third-party creditor beneficiaries of the "Agreement for Participation in Farmer Programs Guarantee Loan Pro-

grams of the United States Government" between the FSA and the Bank. In support of this claim, appellants refer this Court to certain language of the agreement and to section 1941.2 of Title 7 of the Code of Federal Regulations which describes the objectives of the loan program. 7 C.F.R. § 1941.2 (2002). Appellants cite no case law supporting their claim that the "Agreement for Participation" establishes a legal duty owed to them by the Bank or FSA that makes them creditor beneficiaries of the agreement.[7]

The Bank argues that the Ortegas were not intended third-party beneficiaries of the agreement. They cite to several reviewing courts outside of Texas for the proposition that borrowers, as a matter of law, are not third-party beneficiaries of federal loan guarantee agreements between federal agencies and lending institutions.

■■■■ There is a strong presumption in Texas law against third-party beneficiary agreements, and we must look to the terms of the contract to determine whether the contracting parties expressly demonstrated an intent to depart from that presumption. *Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.-Fort Worth 1996, no writ). A third-party beneficiary contract will not be created by implication. *MJR Corp. v. B & B Vending Corp.*, 760 S.W.2d 4, 12 (Tex. App.-Dallas 1988, writ denied). We must begin with the presumption that the parties to a contract contracted for themselves unless it "clearly appears" that they intended the third party to benefit from the contract. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975). The intent of the contracting parties is controlling. *Id.* at 503. If there

is any reasonable doubt as to the contracting parties' intent to confer a direct benefit on the third party by way of the contract, the third-party beneficiary claim must fail. *MJR Corp.*, 760 S.W.2d at 11.

■■■■ A third party faces a "difficult burden" in establishing a contractual third-party beneficiary claim. *Marine Creek*, 926 S.W.2d at 795. A third party may enforce or recover under a contract only if: (1) the contracting parties intended to secure some benefit to that third party; and (2) the contracting parties entered into the contract directly for the third party's benefit. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex.2002)(per curiam); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). The intent of the contracting parties to confer a direct benefit to the third party must be "clearly and fully" expressed in the agreement itself, or enforcement by the third party will be denied. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651.

■■■■ To qualify as an intended third-party beneficiary, the third party must show that it is either a "donee" or "creditor" beneficiary. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. The fact that a third party may receive an incidental benefit from a contract is not sufficient to provide him a right of action to enforce or recover under the contract. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. Furthermore, the contracting parties must intend to secure a benefit for the specific third party bringing the action; it is not enough that the contract is designed to benefit a broad class of people, of whom the third-party might be a member. *Stine*, 80 S.W.3d at 589 ("A third party may recover on a contract made between

**7.** The sole case cited by appellants in support of this issue does not deal with FSA participation agreements. It also was not designated for publication and so has no precedential value. Tex.R.App. P. 47.7.

other parties only if the parties intended to secure a benefit to *that* third party ....")(emphasis added); *MCI*, 995 S.W.2d at 651 (same); *Gonzalez v. City of Mission*, 620 S.W.2d 918, 922 (Tex.Civ.App.-Corpus Christi 1981, no writ)(rejecting argument that contract between the Department of Housing and Urban Development and the City of Mission intended to make plaintiff family a third-party beneficiary, noting that the contract "clearly shows it was designed to assist a broad class of people, not just one individual family.").

■■■■ The Ortegas assert that they are creditor beneficiaries of the agreement. A person is a creditor beneficiary if the performance promised under the contract is in satisfaction of a legal duty, such as an indebtedness, contractual obligation, or other legally enforceable commitment, owed to the person by the promisee. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. In other words, a creditor beneficiary is "a third person to whom the bargain-seeking party (the 'promisee' or contract party exacting the particular stipulation) has an indebtedness, contractual obligation, or other legally enforceable commitment to the third party which commitment the bargain-seeker wishes to discharge or protect by stipulating that the bargain-giver (the opposing contract party or 'promisor' concerning the particular stipulation) shall deliver a contract performance to the third party." *MJR*, 760 S.W.2d at 11. Thus, a court first must

identify the bargain-seeker in the agreement; next, examine whether there is any indebtedness, contractual obligation, or other legally enforceable commitment between the bargain-seeker and the third party; and last determine whether the bargain-seeker clearly intended to discharge or protect that indebtedness, contractual obligation, or other legally enforceable commitment by stipulating in the agreement that the bargain-giver would contractually undertake to satisfy the same. *Id.* As noted, this intent must be "clearly and fully" expressed in the agreement itself. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. Furthermore, the promisee must intend that the beneficiary have the right to enforce the agreement. *MJR*, 760 S.W.2d at 16. Both the intent to confer a benefit on the third party by way of the agreement and the intent that the third party have the right to enforce the agreement must be present, or the third party remains an incidental beneficiary. *Id.*

■■■■ In support of their argument that they are "creditor" beneficiaries of the "Agreement for Participation in Farmer Programs Guarantee Loan Programs of the United States Government" between the FSA and the Bank, the Ortegas refer to certain language in the agreement and also to statutory language describing the objectives of the loan program.[8] In determining whether the Bank and FSA intended to secure a benefit to the Ortegas by

---

**8.** Specifically, appellants cite to section 1941.2 of the Code of Federal Regulations which reads:

> The basic objective of the OL loans program is to provide credit and management assistance to farmers and ranchers to become operators of family-sized farms or continue such operations when credit is not available elsewhere. FmHA or its successor agency under Public Law 103–354 assistance enables family-farm operators to

use their land, labor, and other resources and to improve their living and financial conditions so they can obtain credit elsewhere. The objective of the OL loan program for rural youth is to provide credit for rural youths to establish and operate income-producing projects of modest size in connection with their participation in 4–H clubs, Future Farmers of America, and similar organizations.

7 C.F.R. § 1941.2 (2002).

way of the "Agreement to Participate" and entered into the "Agreement to Participate" directly for the Ortegas' benefit, we must examine the text of the agreement itself for a "clear indication" of this intent. *MCI*, 995 S.W.2d at 652. A court will not imply a third-party contract from documents extraneous to the agreement. *MJR*, 760 S.W.2d at 12–13. "It is well settled that one claiming to be a third-party beneficiary succeeds or fails according to the provisions of the contract sued upon." *Bass v. City of Dallas*, 34 S.W.3d 1, 8 (Tex.App.-Amarillo 2000, no pet.)(quoting *Greenville Indep. Sch. Dist. v. B & J Excavating, Inc.*, 694 S.W.2d 410, 412 (Tex.App.-Dallas 1985, writ ref'd n.r.e.)). Thus, we will examine only the language of the agreement itself.[9]

Appellants rely on the following language of the agreement:

B. General Requirements for the Lender....

 2. *Knowledge of Program Requirements:* The Lender is required to obtain and keep itself informed of all program regulations and guidelines....

 4. *Employee Qualifications.* The Lender shall maintain a staff that is well-trained and experienced in origination and loan servicing functions....

C. Underwriting Requirements

 1. *Responsibility.* The Lender is responsible for originating, servicing, and collecting all guaranteed Farmers Programs in accordance with Agency regulations....

D. Servicing Requirements....

 2. *Negligent Servicing.* The guarantee cannot be enforced by the Lender to the extent a loss results from a violation of usury laws or negligent servicing regardless of when [FSA] discovers such violation or negligence. Negligent servicing is defined as the failure to perform services which a reasonably prudent lender would perform in servicing its own portfolio of loans that are not guaranteed....

5. Delinquent Accounts....

 c. The Lender will negotiate in good faith to resolve any problem in order to allow the borrower to cure a default, where reasonable.

■ In determining whether the contracting parties intended to make the Ortegas third-party beneficiaries of the "Agreement to Participate," we must consider the entire scope of the agreement and give effect to all its provisions. *Stine*, 80 S.W.3d at 590; *MCI*, 995 S.W.2d at 652. In examining the agreement at issue, we do not find any language that acknowledges any legal obligation owed by either the Bank or FSA to the Ortegas. Nor do we find that either the Bank or FSA requires the other to undertake any action to discharge or protect any legal obligation owed to the Ortegas. Likewise there is no language that indicates that the Ortegas may sue to enforce the agreement to secure the performance of an action intended to discharge or protect a legal obligation owed to them. The language cited to us by appellants does not demonstrate that either FSA or the Bank has an indebtedness, contractual obligation, or other legally enforceable commitment to the Ortegas, nor does it evince a "clear intent" to provide a direct benefit to the Ortegas in satisfaction of any indebtedness, contractual obligation, or other legally enforceable benefit directly to the Ortegas by way of the particular agreement at issue in this case.

**9.** We note, however, that the language setting out the objectives of the program does not in any way evince an intent to provide a specific

commitment to the Ortegas. The clear intent of the agreement is to set out the obligations of the Bank and the FSA *vis-a-vis* the Bank's participation in the Farmer Programs Guaranteed Loan Programs to protect both parties and minimize the need for the federal government to actually pay out the guarantee. The only parties provided remedies for violations or disputes under the agreement are the Bank and FSA. There is no language even suggesting or implying that any third party has any remedy for a violation of the agreement or that the agreement is being made for the benefit of another party, much less expressing a clear intent to provide a direct benefit to a particular party, although incidental benefits might inure to borrowers under the loan program.

Appellants suggest that the objectives of the loan program as set out in section 1941.2 [10] establish a legal duty owed to them by FSA and so the "Agreement for Participation in Farmer Programs Guaranteed Loan Programs" was entered into for their benefit and made them third-party creditor beneficiaries with the right to enforce the agreement. We do not read a statement of objectives and purposes for the federal farm loan guarantee program to create a legal, enforceable duty on the part of FSA toward the Ortegas, and appellants provide no authority supporting such a claim.[11] More importantly, as noted, under Texas law, before a third party may enforce or recover under an agreement, the agreement itself must demonstrate a clear intent to convey a direct benefit to that third party in satisfaction of an existing legal obligation. *Stine,* 80 S.W.3d at 589; *MCI,* 995 S.W.2d at 651. The agreement at issue in this case does not do so. Accordingly, we find that appellants are not third-party beneficiaries of the agreement at issue. We hold that the trial court did not err in granting summary judgment on their breach of contract claim and overrule appellants' first issue.

### NEGLIGENCE

■ In their second issue, the Ortegas assert that the Bank owed a duty to them, imposed by law and independent of the contract, that was breached by the Bank, and thus the trial court improperly granted summary judgment against them on their negligence claim. Specifically, they cite former section 1980.130 of Title 7 of the Code of Federal Regulations as imposing a duty of the Bank to "[assure] that proceeds from the sale or other disposition of collateral are accounted for and applied in accordance with the lien priorities on which the guarantee is based." 7 C.F.R. § 1980.130, *removed* 61 FR 35916, 35,934, July 9, 1996, *see now* 7 C.F.R § 762.142 (2002). Appellants argue that the Bank was negligent in discharging this duty by initially applying the insurance funds received to the outstanding debt instead of the operating line of credit. Appellants also refer to "numerous CFR provisions" in the contract upon which they rely, but they do not specify any other particular

---

**10.** See footnote 8.

**11.** We have found no case law in Texas deciding whether agreements to participate in the federal farmer loan guarantee program between FSA and lending institutions create a third-party beneficiary contract to the benefit of borrowers under the loan guarantee program, nor have the parties provided us any such case law. Other jurisdictions have held that agreements between the FSA and a lend-er, such as the one at issue in the present case, which outline the lender's duties and responsibilities for all contracts and guarantees issued to the institution rather than duties as to a particular borrower, do not support a third-party beneficiary claim. *See Parker v. USDA,* 879 F.2d 1362, 1366 (6th Cir.1989); *Schuerman v. United States,* 30 Fed. Cl. 420, 434 n. 14 (1994).

duty that they alleged was owed to them and breached by the Bank.

The Bank responds that the Ortegas, in their fourth amended petition under their claim for negligence, did not allege a duty under law but pled rather that the duty owed to them was "created by the contract as referred to in paragraph II." The Bank argues that the Ortegas thus did not plead any duty independent of the contract, and therefore, since the only alleged duty was one created by contract and the damages sought arose only from the alleged breach of contract, appellants' claim sounds only in contract and the trial court correctly granted summary judgment against the negligence claims.

We first note that the Bank is correct in its recitation of appellants' pleadings regarding negligence. Appellants' petition only claims the breach of a duty alleged to have been created by "the contract."

 Where the only duty between parties arises from a contract, a breach of this duty will ordinarily sound only in contract, not in tort. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991). As a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract. *Id.; Southstar Corp. v. St. Paul Surplus Lines Ins. Co.,* 42 S.W.3d 187, 193 (Tex.App.-Corpus Christi 2001, no pet.).

Appellants' petition [12] makes no claim of the breach of any duty independent of a contract and, in fact, specifically asserts the violation of a duty "created by the contract." This fails to raise a negligence claim as a matter of law. *DeLanney,* 809 S.W.2d at 494; *Southstar Corp.,* 42 S.W.3d at 194. Moreover, the only damages claimed are economic damages arising from the alleged breach of contract. [13] Accordingly, any claim as to these damages would sound only in contract. *DeLanney,* 809 S.W.2d at 494–95. We hold that the trial court correctly granted summary judgment against appellants' negligence claims and overrule appellants' second issue.

## FRAUD

 In their final issue, appellants aver that there was evidence of misrepresentation and so the trial court should not have granted summary judgment on their claim of fraud. In their response to the Bank's supplemental motion for summary judgment, appellants attached excerpts from the deposition of Bacilio Garcia and Marcos Garza [14] and a letter from Mr. Garcia which they claim demonstrate that the Bank did not sufficiently disclose its reasons for its actions in denying the non-FSA guaranteed direct line of credit for which they applied in September 1996.

The letter in which the fraudulent statement was allegedly made was a notice from Garcia to appellants that the Bank would not extend credit. In it, Garcia stated:

**12.** Appellants did argue that the Bank had violated a duty imposed by federal regulations in their response to the motion for summary judgment, but they did not amend their petition to assert a claim of the violation of any duty apart from one "created by the contract."

**13.** In their petition, appellants plead that a breach of contract occurred by conduct that might have been either negligent or intentional conduct and do not assert a tort arising from conduct apart from the alleged breach of contract or claim any damages apart from those arising from the alleged breach.

**14.** The deposition excerpt of Marcos Garza, an FSA official, dealt with the objectives of the loan guarantee program. Nothing in that exhibit appears to go to the issue of the alleged fraud on the part of the Bank.

Unfortunately, the bank's loan committee has determined that it is way too early for the bank to commit itself. As you know, the drought condition in the Valley has not changed and thus the availability of water is not known. The committee feels it is not prudent to start advancing money so early without having a clear picture of what lies ahead.

In the deposition excerpt, Garcia stated that the bank committee was being cautious in extending credit to any farm request because of the drought conditions then existent in the Rio Grande Valley, but did not make any investigation to determine how much water was available for the particular district in which the Ortegas' land lay.

Appellants argue that the Bank's "incomplete disclosure" in the letter of September 16, 1996 of its reason for denying credit, as well as "the lack [of] investigation of the actual water allotments" were "material misrepresentations . . . . made 'recklessly and without knowledge of the truth,'" thus forming the basis for a fraud claim. They argue that the Bank "misrepresented the reason why the loan was denied and used an entirely misrepresented reason for the denial." They further argue that "this fraud prevented [them] from seeking other forms of financing," though they cite to no evidence of such reliance to their detriment.

The Bank replies that appellants misconstrue the representation that was made. The Bank points out that it never represented to the Ortegas that it had checked water availability. The Bank argues that the only representation made was that there was general concern of a water shortage because of the drought, that the statement was true, and so no material misrepresentation was made. The Bank notes that appellants failed to provide any contrary summary judgment

evidence demonstrating that the reason given was not true. The Bank also argues that the evidence filed by appellants in response to their motion for a no-evidence summary judgment on this issue—the guarantee agreement, deposition excerpts from Garcia and Garza, and the letter from Garcia with the disputed statement—provides no evidence of a material misrepresentation, that the Ortegas relied on such alleged material misrepresentation, or that it caused them any injury, and therefore summary judgment was proper.

■■■ The elements of fraud in Texas are: (1) a material misrepresentation; (2) which was false; (3) which was known to be false or was asserted without knowledge of the truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Johnson & Johnson Med. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex.1996). The Bank filed evidence, through the deposition of Bacilio Garcia, that the Bank declined the request because of concerns about the drought and water condition at the time. Appellants did not provide any controverting evidence in their response which demonstrated that the Bank's stated reasons were a misrepresentation of the true reasons for its denial of the Ortegas' request for credit. We find that there was no misrepresentation and that the Bank met its burden to disprove the element of a material misrepresentation. We also find that appellant did not provide any evidence, in response to the no-evidence summary judgment grounds, that demonstrated a material misrepresentation, actual reliance on, or injury caused by, the alleged false material misrepresentation. We hold that the trial court properly granted summary judgment against appellants' fraud claim under either the traditional or no-evidence summary judgment

grounds. We overrule appellant's third issue.

## CONCLUSION

Having overruled all of appellants' issues, we affirm the judgment of the trial court.