NUMBER 13-03-00708-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

ALEX
AMAYA, INDIVIDUALLY

AND AS
NEXT FRIEND OF CLAIRE

AMAYA,
A MINOR, AND ON BEHALF

OF THE
ESTATE OF OFELIA G. AMAYA,

DECEASED
AND LEONOR GUTIERREZ,

INDIVIDUALLY,                                                                             Appellants,

 

                                                             v.

 

BAY
AREA HEALTHCARE GROUP LTD.

D/B/A
CORPUS CHRISTI MEDICAL CENTER

DOCTOR=S REGIONAL MEDICAL CENTER 

AND
ROBERT WANG, M.D.,                                                 Appellees.

 

      On appeal
from the 319th District Court of Nueces County, Texas.

 

                                                    

                               MEMORANDUM
OPINION

 

                         Before
Justices Hinojosa, Yañez, and Garza








                            Memorandum
Opinion by Justice Yañez

 

Appellants, Leonor Gutierrez, individually,
and Alex Amaya, individually, as representative of the estate of Ofelia G.
Amaya, and as next of friend of Claire Amaya, a minor, appeal from the trial
court=s grant of summary judgment in favor of appellees,
Bay Area Healthcare Group, Ltd., d/b/a Corpus Christi Medical Center, and
Robert Wang, M.D., on their causes of action for negligence brought under the
medical liability act.  We reverse and
remand. 

Background

On December 27, 1998, Ofelia Amaya, a thirty-two
year old woman who was seven weeks pregnant, arrived at the Corpus Christi
Medical CenterCDoctor=s Regional Medical Center (AMedical Center@), complaining of shortness of breath, fever,
chills, congestion, and a cough.  Ms.
Amaya was subsequently admitted to the Medical Center.  Upon admission, multiple laboratory tests
were ordered, and Ms. Amaya was prescribed an antibiotic for the treatment of
potential bacterial pneumonia.  Ms. Amaya=s health rapidly deteriorated, characterized by a
worsening fever, tachycardia, tachypnea and hypoxia, which required intubation
and mechanical ventilation beginning on December 29, 1998.  Shortly thereafter, Ms. Amaya was diagnosed
with Acute Respiratory Distress Syndrome (AARDS@).  At
approximately 1:00 p.m. on January 1, 1999, Ms. Amaya arrested while on
ventilation, and developed a tension pneumothorax, which resulted in severe
brain damage that ultimately led to her death. 
Dr. Wang, a pulmonologist, who was the assigned primary physician in
charge at the Medical Center at the time of Ms. Amaya=s death, saw her approximately three hours after she
died. 








Appellants subsequently filed suit against the
Medical Center, and Drs. Isaac Chitrit, Stephen Barth, Keith Rose, Charles
Gilleland, and Robert Wang, asserting numerous negligence claims against the
doctors and hospital.[1]
Appellees subsequently filed no-evidence motions for summary judgment, which
the trial court granted on September 2, 2003. 
This appeal ensued.

Issues on Appeal

In two issues, appellants contend the trial court
erred (1) in granting appellees= no-evidence motions for summary judgment, and (2)
by denying their request to conduct further discovery.  We address these contentions in the order
presented.

In their first issue, appellants specifically
contend the trial court improperly granted the no-evidence summary judgments
because deposition testimony and supporting documentation from appellants= expert, Dr. Mark Siegel, supported their contention
that Ms. Amaya would have survived with proper monitoring, evaluation, and
treatment.  In contrast, appellees argue
summary judgment was proper because appellants failed to present fact issues
concerning breach of the standard of care and proximate cause. 

Standard of Review








A no‑evidence summary judgment is equivalent
to a pretrial directed verdict, and this Court applies the same legal
sufficiency standard of review.[2]  In an appeal of a no‑evidence summary
judgment, this Court reviews the evidence in the light most favorable to the
nonmovant, disregarding all contrary evidence and inferences.[3]  If the nonmovant produces evidence to raise a
genuine issue of material fact, summary judgment is improper.[4]  All that is required of the non‑movant
is to produce a scintilla of probative evidence to raise a genuine issue of
material fact.[5]  "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere
surmise or suspicion of a fact.'"[6]  Conversely, more than a scintilla exists when
the evidence "rises to a level that would enable reasonable and fair‑minded
people to differ in their conclusions."[7]  The burden of producing evidence is entirely
on the non‑movant; the movant has no burden to attach any evidence to the
motion.[8]

Applicable Law

The elements that must be proven for a medical
malpractice action are (1) a physician's duty to act according to a certain
standard, (2) a breach of the applicable standard of care, (3) an injury, and
(4) a causal connection between the breach of care and the injury.[9]

Analysis








On December 28, 2000, appellants filed suit,
asserting that appellees were negligent in (1) hiring personnel that failed to
follow hospital and doctors= orders regarding Ms. Amaya=s treatment, (2) allowing Ms. Amaya to be treated
with the wrong antibiotic, thereby delaying proper treatment and allowing her
condition to deteriorate, (3) not requiring respiratory therapists to record
plateau pressures,[10]
and (4) allowing continued ventilation with dangerously high tidal volumes,
despite rising peak airway pressures.  

In appellees= no-evidence motions for summary judgment, they
argue that no evidence existed to support the breach and proximate cause
elements of appellants= negligence claims. 
In contrast, appellants argue in their response that more than a
scintilla of evidence exists to support the breach and proximate cause elements
of their claims.  As supporting evidence,
appellants attached the following: (1) Dr. Siegel=s
curriculum vitae; (2) an expert report authored by Dr. Siegel; (3) Dr. Siegel=s deposition testimony; (4) Dr. Wang=s deposition testimony; (5) Ms. Amaya=s nursing charts; and (6) numerous published
articles discussing ARDS.

The trial court issued two orders granting appellees= motions for summary judgment.  The orders state, in relevant part, as
follows:

On the 18th day of August 2003, came on
to be heard Defendant Robert Wang, M.D.=s Motion for Summary Judgment.  The Court, after considering the Motion, the
evidence on file and attached to Plaintiffs=
Response . . . is of the opinion that said motion should be GRANTED in all
respects. . . It is further, ORDERED, that Defendant Robert Wang, M.D.=s Motion for Summary Judgment is hereby GRANTED and
Plaintiff=s [sic] claims against Robert Wang, M.D., are
DISMISSED WITH PREJUDICE.  

 

SIGNED this 2 day of Sept., 2003. 








On the 18th day of August, 2003, came on to be heard
Defendant [Medical Center=s] No Evidence Motion for Summary Judgment . . . The
Court, after considering the Motion, the evidence on file and attached to
Plaintiffs= Response . . . is of the opinion that said motion
all respects [sic] is well-taken and should be GRANTED.  

 

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that
Defendant [Medical Center=s] No Evidence Motion for Summary Judgment pursuant
to rule 166a(i) of the Texas Rules of Civil Procedure is hereby GRANTED and
that Plaintiffs should take nothing by this suit for any of their claims and
causes of action against Defendant [Medical Center].

 

It is further, ORDERED, ADJUDGED AND DECREED by the
Court that Plaintiff=s [sic] claims and causes of action against
Defendant [Medical Center] are hereby dismissed.

 

IT IS SO ORDERED.

 

SIGNED this 2 day of Sept.,
2003. 

In his expert report, dated February 28, 2002, Dr.
Siegel stated, in relevant part, the following:

Case Summary       

 

Ofelia Amaya was a 32-year old woman, 7 weeks
pregnant, with a history of diabetes, who presented to the Emergency Room of
Corpus Christi Medical Center on 12/27/98 complaining of shortness of breath,
fever, chills, and cough productive of green sputum.  She had had one week of cold symptoms and was
treated with amoxicillin without success. . .

Upon admission, azithromycin was ordered for the
treatment of presumed bacterial pneumonia, but instead she was given aztreonam
for the first day, an antibiotic with no gram-positive coverage and an inappropriate
agent to use for the treatment of community acquired pneumonia.  The mistake was noted on the second hospital
day . . . Her chest radiograph by report showed diffuse bilateral infiltrates
consistent with acute respiratory distress syndrome (ARDS). . . Her peak airway
pressures gradually rose to dangerously high levels.  At approximately 2 PM, Ms. Amaya arrested . .
. Despite aggressive resuscitation, she experienced severe anoxic brain damage
and the next day became brain dead and expired.

 

Assessment

 








The care given to Ms. Amaya was substandard in two
key areas.  First, despite being admitted
for a community acquired pneumonia, she was treated with the wrong drug . . .
Because she did not receive appropriate antibiotics in a timely fashion, Ms.
Amaya was placed at increased risk for inadequate treatment of her infection
and therefore at increased risk for the complications which ultimately
developed, specifically ARDS and death. 
Had she been treated appropriately with antibiotics from the start of
her hospitalization, it would have been significantly more likely that these
complications would not have occurred.

Second, the increasing airway pressures indicated on
Ms. Amaya=s Respiratory flow sheet suggest strongly that she
was being ventilated with excessive tidal volumes, placing her at high risk for
barotrauma.  The tension pneumothorax
that caused her cardiac arrest resulted from excessively high tidal
volumes.  Her physicians and respiratory
therapists should have followed standard practice for the mechanical
ventilation of ARDS patients and used lower tidal volumes from the start.  At the least, they should have decreased the
tidal volumes when her peak airway pressures rose to dangerous levels. . . Had
they followed standard practice, the tension pneumothorax likely would not have
occurred and she would not have suffered a cardiac arrest.  

Although the patient surely suffered from the
individual errors of mistaken antibiotic dosing and faulty ventilator
management, the combination of the two was particularly devastating.  To a reasonable degree of medical certainty,
I am confident that, Ms. Amaya would have survived if she had been given
appropriate antibiotics in a timely fashion along with appropriate ventilator
management after she was intubated.  The
failure to provide standard medical care in these crucial areas contributed
substantially to her death.

. . .

 

The medical center bears responsibility for:

 

Allowing Ms. Amaya to be treated with the wrong
antibiotic, thus delaying appropriate treatment for her pneumonia and allowing
her condition to deteriorate.  Delivering
the wrong antibiotic despite a clear order from the physician was a gross deviation
from the standard of care.  Not requiring
its Respiratory Therapists to record plateau pressures, a standard respiratory
parameter used to ensure that patients are not ventilated with dangerously high
tidal volumes; and Allowing continued ventilation with dangerously high tidal
volumes despite rising peak airway pressures, thus increasing the risk that she
would have the pneumothorax that led to her demise.

. . .

 








Dr. Robert Wang,
Pulmonologist.  The standard of care dictates that Dr. Wang
should have been monitoring the patient closely in the ICU and should have been
aware that the airway pressures recorded on the Respiratory Therapy flow sheet
indicated the patient was in grave danger. 
Had he addressed the abnormalities appropriately, the patient=s ventilator settings would have been adjusted by
decreasing tidal volumes, which would have greatly decreased the patient=s risk for developing the pneumothorax, which led to
her death.  As a Pulmonologist, he should
have been particularly concerned about the airway pressures noted on the
Respiratory Therapist=s Documentation sheet. . .

In his deposition, Dr. Siegel testified numerous
times that Dr. Wang Ashould have seen her a lot earlier than he actually
did . . .@  Dr. Siegel
further stated that Athe physicians taking care of Mrs. Amaya failed to
evaluate her.@  He also
opined that the Adisease process that led to the high airway
pressures that led to her pneumothorax had the potential for interventions that
could have taken place which could have saved her life.@  According to
Dr. Siegel, Athe physicians either didn=t pay any attention to the airway pressures or just
assumed that there was nothing that could be done about them.  Okay. 
And neither of those would be standard care.@  

Finally, Dr. Siegel stated the following:

My point is that a reasonable physician who was
called to evaluate a patient with high airway pressures would have the
opportunity to do an evaluation, which in turn, in most likelihood B in all likelihood would lead to an intervention
that would save this patient=s life. Okay. 
Now, we don=t know that because the evaluation wasn=t done, so there=s no
way to answer that question for sure . . . because substandard care occurred
here, and there was no evaluation. . . 

 

Regarding causation, Dr. Siegel stated, ASo I think to a reasonable degree of probability,
the failure to assess the high airway pressures was a proximate cause in this
patient=s death.@  Dr. Siegel
also confirmed, based upon reasonable medical probability, that the way Ms.
Amaya Awas managed@ caused her death. 
Dr. Siegel further stated, 








As I=ve said many times, the complications that
ultimately ensued were multiple . . . [a]nd my concern about this case is that
when the airway pressures went up and compliance fell, that nobody did an
evaluation to see whether there were any correctable problems that could be
addressed.  And my feeling is, to a
reasonable degree of medical probability, that had an evaluation been done in
response to the increasing airway pressures, that they would have found a
correctable problem. 

Viewing the evidence in the light most favorable to
the non‑movant, evidence tends to support the occurrence of a breach of
the standard of care.  Evidence also
tends to support that the breach of the standard of care proximately caused Ms.
Amaya=s death. 
After a careful review of all the evidence, we conclude appellants
produced far in excess of a scintilla of evidence to support the breach and
causation elements of their negligence claims.[11]  Therefore, the trial court abused its
discretion in granting the no-evidence summary judgments in favor of the
Medical Center and Dr. Wang.[12]  Accordingly, we sustain appellants= first issue. 


In their second issue, appellants contend the trial
court improperly denied them an opportunity to conduct further discovery.  Specifically, appellants sought to depose the
nursing staff to develop evidence relating to monitoring of the ventilation
equipment.  However, appellants never
brought this request to the trial court=s attention.[13]  As such, they failed to preserve this issue
for appellate review.  Accordingly, their
second issue is overruled.[14]  

Conclusion








Because the summary judgment evidence presented by
appellants raised material issues of fact, we hold the trial court erred in
granting summary judgment in favor of appellees.  Accordingly, we reverse the trial court=s orders granting summary judgment in favor of the
Medical Center and Dr. Wang and remand this case to the trial court for further
proceedings.

 

                                                              
                                                                                                                                                         LINDA REYNA YAÑEZ,

Justice

 

 

 

 

Memorandum
opinion delivered and filed 

this
the 8th day of June, 2006.

 

 

 











[1] 
Appellants non-suited all doctors, other than Dr. Wang and the Medical
Center.  





[2] 
  City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005); Ortega v. City
Nat'l Bank, 97 S.W.3d 765, 772 (Tex. App.BCorpus Christi 2003, no pet.) (op.
on reh'g).  





[3] 
City of Keller,
168 S.W.3d at 807; Ortega, 97 S.W.3d at 772.  





[4]  Tex. R. Civ. P. 166a(i).





[5] 
Ortega, 97
S.W.3d at 772.





[6] 
Id. (quoting Kindred v. Con/Chem Inc., 650 S.W.2d 61, 63
(Tex. 1983)). 





[7] 
Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)). 





[8]  Tex. R. Civ. P. 166a(i).





[9] 
Day v. Harkins & Munoz, 961 S.W.2d 278, 280 (Tex. App.BHouston [1st Dist.]1997, no
pet.).  





[10] 
The recording of plateau pressures ensures patients are not ventilated
with dangerously high tidal volumes.  





[11] 
Tex. R. Civ. P. 166a(i); Day,
961 S.W.2d at 280; Ortega, 97 S.W.3d at 772. 





[12] 
Tex. R. Civ. P. 166a(i); Day,
961 S.W.2d at 280; Ortega, 97 S.W.3d at 772. 





[13] 
See Tex. R. App. P. 33.1.





[14]  Id.