

**NUMBER 13-11-00089-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GREG GIBSON,                                                                          Appellant,

v.

STP NUCLEAR OPERATING COMPANY,                                    Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Vela

This is an appeal from a summary judgment granted in favor of appellee STP

Nuclear Operating Company ("STP"), and against appellant, Greg Gibson. By three

issues, Gibson argues that the trial court erred by: (1) granting judgment even though he

provided evidence upon each element of his claim that he was entitled to a pro rata share of an Employee Incentive Compensation Plan ("EICP") bonus and STP failed to establish its right to summary judgment as a matter of law; (2) granting STP's motion on his claim for real estate closing costs under the terms of his initial relocation package; and (3) granting STP's motion for summary judgment on Gibson's claim for the value of a business trip.   We affirm.

## I. BACKGROUND

STP hired Gibson on August 1, 2006, to fill the position of licensing manager for STP Units Three and Four.   STP provided Gibson a salary and other benefits, including eligibility for inclusion in STP's EICP, an executive bonus plan, and for certain relocation assistance benefits.   These benefits were set forth in an offer letter, dated July 17, 2006, that Gibson received from Mark McBurnett, STP Vice-President of Oversight and Regulatory Affairs for Units Three and Four.

On August 25, 2008, Gibson sent an internal company memorandum to McBurnett, with a copy to STP's president, Kevin Richards, "to confirm that [he] would be retiring from STP Units 3 and 4 on October 1, 2008."   Gibson's last day at STP was September 13, 2008.   In October 2008, attorney Joseph Martinec sent a letter to STP, claiming that Gibson was entitled to:   "(1) his resulting share award for 2008 (pro rata); (2) his Fairway Pointe Relocation real estate commission expenses (pro rata); and (3) his special recognition award (either in cash equivalent or to be honored through September 2009).

2

STP determined that Gibson was not entitled to the requested payments because he had resigned, rather than retired, from employment prior to the end of 2008 and forfeited any eligibility for a bonus that year, the sale of the property for which he sought reimbursement was not the sale of his primary residence and, after resigning from STP, Gibson was not entitled to any cash value of an untaken travel opportunity. It is undisputed that Gibson was paid awards under the EICP for 2006 and 2007, and would have been eligible to participate in the plan for 2008.

Thereafter, Gibson filed suit against STP asserting causes of action against STP for failure to comply with their contractual agreements and sought $78,000.00 in actual damages as well as interest and attorney's fees. STP answered and moved for summary judgment. The trial court granted the summary judgment. This appeal ensued.

## II. STANDARD OF REVIEW

A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g). Such a motion should be granted if there is no evidence of at least one essential element of the plaintiff's claim. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion, and if the

3

non-movant produces evidence raising a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Ortega*, 97 S.W.3d at 772 (*quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see Forbes*, 124 S.W.3d at 172. Conversely, more than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes,* 124 S.W.3d at 172. In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez,* 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 825–27 (Tex. 2005).

We review the trial court's granting of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant has the burden of proof and

4

all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.,* 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When, as here, an order granting summary judgment does not state the specific grounds on which summary judgment was granted, we will uphold it on any meritorious ground presented in the motion. *Cincinnati Life Ins. Co. v. Cates*, 947 S.W.2d 608, 610 (Tex. 1997). And when a party moves for summary judgment under both rules 166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the rule 166a(c) burden. *Id.*

## III. ANALYSIS

### A. Did STP establish as a matter of law that Gibson was not entitled to a pro rata share of the EICP bonus?

By Gibson's first issue, he urges that the trial court erred in granting STP's traditional motion for summary judgment on his breach of contract claim because he provided evidence of each element of his claim. He claims he is entitled to his pro rata share of the EICP bonus. Gibson urges that he acted in reliance upon the agreement that he signed. In contrast, STP argues that the contract itself prohibits his recovery. According to STP, its summary judgment evidence established as a matter of law that

5

Gibson forfeited any eligibility for a 2008 plan award when he left STP prior to December 31, 2008. The parties disagree with respect to whether Gibson "retired" or "resigned."

If the words of a contract can be given a definite meaning, the contract is unambiguous and should be construed as a matter of law. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). In construing a contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Hofland v. Fireman's Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex. App.—Corpus Christi 1995, no writ).

Gibson's breach of contract claim relies upon his assertion that he retired from STP, rather than resigned. Thus, we begin our analysis by reviewing the record to determine if STP established as a matter of law that Gibson was not entitled to a pro rata share of the EICP award. The parties appear to be in agreement that all rights or liabilities between them are primarily governed by the EICP and that the EICP does not specifically define the word "retire."

The EICP was submitted by STP as summary judgment evidence. Under the definition section of paragraph two, the plan does define "retirement plan" with respect to "the STP Nuclear Operating Company Retirement Plan." Paragraph 4 of the EICP defines participation in the incentive plan as follows:

> Participants in the Plan shall be selected for each Plan Year from a select group of management or highly compensated employees of an Employer whose decisions contribute directly to the success of the Company. No employee shall at any time have the right (a) to be selected as a Participant in the Plan for any Plan Year, (b) if so selected, to be entitled automatically to an Annual Award . . .

Paragraph 10 of the EICP provides:

6

The Board of Directors has sole authority and discretion to determine how Awards shall be paid under this Plan. The determination of the Board of Directors, which shall be binding and conclusive on any Participant, shall be set forth in such Participant's agreement. Generally, however, the following provisions may apply:

(b) Payment of Annual Award. A participant who has been granted an Annual award for a Plan Year must have been continually employed with the Company through December 31 of Such Plan Year in order to be eligible for payment of such Annual Award; provided, however, that if (i) the Participant terminates employment with the Company during the Plan Year by reason of death, disability or retirement. . . the Participant shall be eligible to receive a prorated Annual Award . . . .

Paragraph 13 of the EICP states:

[a]ny determination by the Company, the Board of Directors or the President/CEO in carrying out or administering this Plan shall be final and binding for all purposes and upon all interested persons and their heirs, successors, and personal representatives.

Paragraph 14 of the agreement provides:

Any dispute or disagreement which shall arise under, or as a result of or pursuant to, this Agreement shall be determined by the Committee in its absolute discretion, and any such determination or any other determination by the Committee under or pursuant to this Agreement and any interpretation by the Committee of the terms of this Agreement or the Plan shall be final, binding and conclusive on all persons affected hereby. The Plan shall control in case of conflict with this Agreement.

STP also submitted STP's "Retirement Plan" as summary judgment evidence. That agreement states, in part:

Earning Vesting Service

You begin earning vesting service on your employment date (or your 18th birthday, if later) . . . . After five years of vesting service, you are fully vested in the Plan.

Right to Benefits—Vesting

7

> Being vested means that you "own" benefits—or have a right to benefits as outlined in the Plan. The rules of the Plan determine when benefits may be distributed. You will be fully vested in the Retirement Plan after five years of vesting service. If you terminate employment before you are fully vested, you are not entitled to any benefits from the Plan.

Termination before Retirement

> If you terminate employment with the Company before you are vested in the Plan you are not entitled to any benefits.

In addition to the plans, STP submitted as summary judgment evidence the affidavit of McBurnett, the Vice-President of Oversight and Regulatory Affairs for Units Three and Four, who testified, with respect to this issue, that he received a memorandum from Gibson on August 25, 2008, which informed him that Gibson was leaving STP on October 1, 2008. McBurnett learned that Gibson had received an employment offer from UniStar Nuclear Energy and was going to work for that company when he left STP. Larry Taylor a human resources consultant for STP, averred that Gibson did not receive any retirement benefits from STP when he left the company because he had not been employed with STP for five years, the required time to vest.

In response to the motion for summary judgment, with respect to this issue, Gibson submitted portions of the affidavit of McBurnett, who agreed that Gibson used the term "retirement" when he sent him his letter of disassociation. McBurnett also testified that he was aware of another employee, Mr. Sheppard who retired from STP and took a job at another company. According to McBurnett, Sheppard's status was different from Gibson's because Sheppard "retired from the company, went into the company's retirement program and—actually retired from the company."

8

The EICP agreement signed by the parties does not define retirement. However, it does state that: "No employee shall at any time have the right (a) to be selected as a Participant in the Plan for any Plan Year, (b) if so selected, to be entitled automatically to an Annual Award . . ." It also states that:

> Any dispute or disagreement which shall arise under, or as a result of or pursuant to, this Agreement shall be determined by the Committee in its absolute discretion, and any such determination or any other determination by the Committee under or pursuant to this Agreement and any interpretation by the Committee of the terms of this Agreement or the Plan shall be final, binding and conclusive on all persons affected hereby. The Plan shall control in case of conflict with this Agreement.

Where an employer retains the right to interpret an incentive compensation plan, the employer's interpretation must stand, absent bad faith on the part of the employer. *See Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008). Gibson did not plead that the plan terms were ambiguous. Rather, the provisions of the EICP, discussed above, establish that STP had discretion to determine if Gibson should receive a pro rata share for 2008. And the plan stated that an employee was required to be with STP until December 31 of the plan year in order to be eligible, subject to exceptions noted above. The plain language of the contract established as a matter of law that Gibson's actual entitlement to the EICP was discretionary. Thus, STP could, in its discretion, allow Gibson to receive a pro rata share or not. Gibson agreed that he had no vested entitlement to retirement benefits from STP because he was not employed by STP long enough. Gibson's only evidence that he retired from STP is his disassociation letter where he characterizes his departure as "retirement."

9

The plain language of the agreement allows STP to choose to award EICP plan benefits or not and when viewed with the requirement that an employee had to be employed by STP for five years in order for retirement benefits to vest, we hold that STP established that Gibson was not entitled as a matter of law to a pro rata share of such benefits. Gibson's conclusory statement of his subjective belief that he was retired was not sufficient to raise a fact issue. *Larsen v. Santa Fe Ind. School Dist.*, 296 S.W.3d 118, 132 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). We overrule issue one.

## B. Was Gibson Entitled to Reimbursement for Relocation Expenses?

By his second issue, Gibson argues that he was entitled to reimbursement of his relocation expenses according to the terms of his initial relocation package. The relocation package allowed for "home sale assistance." It provided that STP would "pay for reasonable and customary closing costs associated with the sale of the employee's home, including realtor commissions at the locality prevailing rate (normally 6%)." The document also stated that "for the purposes of this policy, a home is defined as a completed dwelling owned and occupied by the employee as a principal residence." Basically, Gibson claims that he was entitled to relocation expenses with respect to a property owned by a family trust called the Fairway Pointe property, which sold while Gibson was employed by STP, rather than relocation expenses for the sale of the Feghali property, which had not sold at the time Gibson left STP.

The summary judgment evidence submitted by STP established that at the time STP hired Gibson he owned a home, the "Feghali Lane" property. He was also a trustee of the Gibson Family Trust, which included the "Fairway Pointe" property. When Gibson

10

came to work for STP in 2006, he had separated from his wife. The evidence was that prior to August or September of 2005, Gibson had moved from the Fairway Pointe property to a nearby motel for a couple of months and later moved his belongings to the Feghali property, which he purchased at the end of 2005 or the beginning of 2006. He lived there until he moved to Texas. He had previously lived with his wife at the Fairway Pointe home for twenty three years. At the time Gibson received the offer letter from STP, the Fairway Pointe property was already for sale. The Feghali property was put on the market when he received the offer letter from STP.

Gibson testified, by deposition, that he had two properties and he was told by STP management that he could choose which property would be subject to the relocation package. He also said that his principal residence was the Fairway Pointe property. He indicated that his preference, initially, however, was to be reimbursed for expenses for relocation efforts associated with the sale of the Feghali property because he thought the Fairway Pointe would sell at some point, which it did.

On December 27, 2006, Gibson and STP executed an "Amended Relocation; Loss on Sale Memorandum," which amended the initial relocation package. STP agreed to provide Gibson with a loan that would allow Gibson the ability to claim a loss on the sale of his primary residence in California. The first supplement also offered the "loss on sale" forgivable loan subject to providing "two appraisals to verify the fair market value of the property." On December 10, 2007 the parties executed a second supplement to the relocation package, which extended the forgivable loan arrangement provided in the first supplement to the relocation package. Gibson provided STP with appraisals for the

11

Feghali property, not the Fairway Pointe property.

At the time Gibson came to work for STP he owned only the Feghali property. The Fairway Pointe property was owned by a trust. The trustees of the Gibson family trust sold the Fairway Pointe Property in February 2007. In December 2007, Gibson executed the second supplement to the relocation package to extend the deadline by which he needed to sell his primary residence in order to qualify for reimbursement of closing costs until December 31, 2008. His intent, at that point in time, was clearly to use the relocation funds for the Feghali property because the Fairway Pointe property had already been sold.

Gibson has produced no evidence, other than his self-serving statement, that the Fairway Pointe home was his primary residence. Nevertheless, all of his actions showed that he intended to use the Feghali property to take advantage of STP's relocation package. It was only after he decided to leave STP that he claimed that he was entitled to use the relocation benefits with respect to the Fairway Pointe property. On the other hand, STP produced evidence that at the time Gibson received the offer from STP he occupied only the Feghali property. He moved all of his personal effects from the Fairway Pointe property to the Feghali property prior to the time he accepted the position with STP. Gibson's breach of contract claim relies upon a contention that the Fairway Pointe property was his principal residence, yet he produced no evidence to raise a fact issue on this claim. We overrule issue two.

**C. Is Gibson Entitled to the Cash Value of a Business Trip not Taken?**

Gibson urges in his third issue that he is entitled to the cash value of a travel opportunity he claims he was owed. About one year before Gibson left STP, he received a letter from STP's president congratulating Gibson on the completion of a license submission for the company. The letter stated: "In recognition of your contribution, I would like to extend to you an invitation for you and your guest to attend a conference or other business related event of your choosing anytime within the next year." By its terms, the travel opportunity would expire on September 1, 2008. Gibson averred in his deposition that he did not take the award within the year because he was involved in another project, and McBurnett told him that they would extend the time in which he could take the trip. It is not disputed that Gibson's assistance was needed, and he testified he did not want to leave the company in a lurch. If, indeed, the travel opportunity was extended for a year, Gibson would have had until September 2009, to take the trip. However, he announced he was leaving STP in August 2008 to be effective October 2008. Gibson left without taking the trip.

Here, Gibson produced no evidence that the parties had contracted to obligate STP to reimburse Gibson for a trip not taken. The offer extended was a gratuitous offer. STP offered Gibson a travel opportunity in recognition of services he had performed for STP. Gibson produced no evidence that a cash value was associated with this opportunity, nor did he show that the trip was any part of his compensation package. There is nothing in the letter from STP's president to suggest that the trip was anything other than a business trip that was to relate to STP employment. Without any evidence

13

showing a contract to reimburse Gibson for the trip not taken, the trial court correctly granted the no-evidence motion for summary judgment.   We overrule issue three.

## IV. CONCLUSION

The judgment of the trial court is affirmed.


ROSE VELA
Justice

Delivered and filed the
8th day of March, 2012.