

**NUMBER 13-07-00579-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

JOSE ELIAS ZEPEDA, SR., Appellant,

v.

INDUSTRIAL SITE SERVICES, INC.
AND RICHARD O. GINGRICH, JR., Appellees.

---

**On appeal from the 36th District Court of Bee County, Texas.**

---

## MEMORANDUM OPINION

**Before Justices Yañez, Garza, and Vela**
**Memorandum Opinion by Justice Garza**

This appeal involves a claim for defamation. Appellant, Jose Elias Zepeda, Sr., appeals the trial court's granting of a no-evidence motion for summary judgment in favor of appellees, Industrial Site Services, Inc. and Richard O. Gingrich, Jr. By two issues, Zepeda contends that the trial court erred in granting appellees' no-evidence motion for summary judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zepeda was employed by Industrial Site Services, Inc. ("Industrial") as a tractor operator. Industrial is a subcontractor of Flint Hills Resources ("Flint Hills") and Gingrich is the president of Industrial. The underlying dispute pertained to a criminal background check conducted on Zepeda, which yielded an erroneous finding that Zepeda had been convicted of a felony in El Paso County, Texas.

As part of his job, Zepeda was required to enter the premises of a Flint Hills refinery. Prior to obtaining access to the refinery, employees were required to pass a criminal background check and attend training at the Contractors Safety Council in Corpus Christi, Texas. Zepeda had previously obtained a badge authorizing him to enter the refinery. However, in 2004, Zepeda damaged his badge and requested "a new identification badge." Gingrich had Zepeda write down, among other things, his birth date, driver's license number, and social security number on a sheet of paper. Gingrich subsequently provided Zepeda's information to Prime Information Center, Inc. ("Prime") to conduct the criminal background check. Based on the information provided by Industrial, Prime conducted the background check and notified Industrial that Zepeda had been convicted of felony possession of marihuana in El Paso County, Texas.[1] On May 5, 2005, Zepeda's employment with Industrial was terminated.

---

[1] Zepeda contends that he has never been convicted of a felony and that the results of the investigation conducted by Prime Information Center, Inc. ("Prime") were incorrect. In his original petition, Zepeda contended that his personal information was either erroneously provided to Prime, or Prime erroneously entered the information into its computerized system for background checks. Zepeda also asserted that he had been employed by Industrial for seven years, and had never been absent from work to participate in a criminal trial in El Paso, Texas, or "to report to a probation or parole officer."

On May 3, 2006, Zepeda filed his original petition, asserting that Prime,[2] Industrial, Gingrich, and Todd Owens[3] had published to others that he had been convicted of a felony. Zepeda contended that the defendants' actions were "defamatory, libelous and slanderous per se," that a false statement of fact pertaining to his alleged conviction was made by defendants, and that the defendants had acted with "actual malice, negligence and/or without regard to fault." Zepeda claimed that he suffered "actual injury, including pecuniary injury, loss of employment, loss of or damage to reputation, personal humiliation, mental and emtional [sic] anguish and suffering, and, general, specific and exemplary damages." Appellees filed their original answer, special exceptions, and motion to transfer venue on July 21, 2006.

On May 30, 2007, appellees filed a no-evidence motion for summary judgment, contending that Zepeda had failed to provide evidence of the elements required for defamation. Even though the motion was entitled, "DEFENDANTS' MOTION FOR NO EVIDENCE SUMMARY JUDGMENT," appellees provided, among other things, the following documents as summary judgment evidence: (1) an affidavit executed by Gingrich; (2) a photocopy of the sheet of paper on which Zepeda provided his personal information to Gingrich; (3) a copy of the report issued by Prime regarding Zepeda's criminal background check; and (4) a copy of a criminal background check conducted by

---

[2] On July 18, 2007, Zepeda and Prime stipulated to the dismissal of Zepeda's claims against Prime with prejudice. The parties agreed to bear attorneys' fees and costs of court in accordance with the parties' confidential settlement agreement. On July 24, 2007, the trial court entered an order of dismissal with prejudice as to Zepeda's claims against Prime. This order is not the subject of this appeal.

[3] Todd Owens was a Prime employee who, as Zepeda alleged in his original petition, appeared "to have authority of a supervisor or officer." On January 15, 2008, Owens was non-suited.

the Bee County Sheriff's Office at Zepeda's request.[4]

Zepeda filed several responses and supplemental responses to appellees' no-evidence motion for summary judgment, asserting that: appellees had improperly attached summary judgment evidence to a no-evidence motion for summary judgment; appellees' motion was not timely filed; appellees failed to address all the claims alleged in the original petition; Gingrich's affidavit contained impermissible legal conclusions and statements not based on personal knowledge; and an affidavit executed by Zepeda himself raised a genuine issue of material fact, which precluded summary judgment.

On July 13, 2007, the trial court granted appellees' no-evidence motion for summary judgment and dismissed Zepeda's defamation claim against appellees. In its order, the trial court specifically noted that "[t]his judgment finally disposes of Plaintiff's defamation cause of action against INDUSTRIAL SITE SERVICES, INC. and RICHARD O. GINGRICH, JR."

On August 15, 2007, Zepeda filed a motion for new trial, in which he (1) asserted that the trial court had improperly granted appellees' no-evidence motion for summary judgment, and (2) challenged Gingrich's affidavit. Specifically, Zepeda alleged that: (1) Industrial had submitted the wrong social security number in conducting its criminal background check; (2) Gingrich's affidavit was inadmissible because he was an interested witness and his affidavit was "not clear, positive, direct, credible or free from contradictions and inconsistencies"; (3) the sheet of paper upon which Zepeda wrote down his personal information was not admitted as a business record and was, therefore, hearsay; and (4)

---

[4] The Bee County Sheriff's Office conducted a criminal background check of Zepeda on May 10, 2005, which indicated that Zepeda had no criminal record.

the summary judgment evidence submitted by appellees was not available for discovery, and thus constituted a surprise. The trial court did not rule on Zepeda's motion for new trial; therefore, it was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal ensued.

## II. STANDARD OF REVIEW

The standard of review for the grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard of review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772. In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega*, 97 S.W.3d at 772. If the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i).

All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact. *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Id.* (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61,

5

63 (Tex. 1983)). Conversely, more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 827. The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion. TEX. R. CIV. P. 166a(i). We may not consider any evidence presented by the movant unless it creates a fact question. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).[5]

### III. ANALYSIS

## A. Zepeda's Defamation Claim

In his first issue, Zepeda contends that the trial court erred in granting appellees' motion for summary judgment because the "evidence was legally and factually insufficient

---

[5] Zepeda argues that because appellees attached summary judgment evidence to their no-evidence summary judgment motion, their motion should be reviewed as a traditional summary judgment motion. *See Michael v. Dyke*, 41 S.W.3d 746, 751 (Tex. App.–Corpus Christi 2001, no pet.) (holding that the requirements of rule 166a(i) of the rules of civil procedure are to be strictly construed and noting that "[w]hen it is not readily apparent to the trial court that summary judgment is sought under rule 166a(i), the court should presume that it is filed under the traditional summary judgment rule and analyze it according to those well-recognized standards"). However, in their no-evidence motion for summary judgment, appellees stated that Zepeda failed to produce any evidence of the elements of a defamation cause of action on which he had the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). Therefore, the substance of appellees' motion was that of a no-evidence motion for summary judgment, and we will analyze it according to those well-recognized standards. *See id.* We will not review the evidence appellees attached to their no-evidence motion for summary judgment unless it creates a genuine issue of material fact. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).

6

to contradict Zepeda's evidence or support summary judgment."  Specifically, Zepeda takes issue with the erroneous finding that he was a convicted felon and the alleged publication of this falsehood to others.  Appellees counter by arguing that Zepeda did not raise an issue of material fact as to the elements for defamation.  Appellees further argue that Zepeda's affidavit is conclusory and cannot constitute competent summary judgment evidence.

### 1. Applicable Law

A defamatory statement is one that tends to injure a person's reputation and thereby exposes the person to public hatred, contempt, ridicule, or financial injury.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 2005); *Einhorn v. LaChance*, 823 S.W.2d 405, 410-11 (Tex. App.–Houston [1st Dist.] 1992, writ dism'd w.o.j.).  To maintain a defamation cause of action, the plaintiff must establish that the defendant:  "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice if the plaintiff was a public official or public figure, or negligence if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

There are two types of defamation:  per quod and per se.  *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.–Waco 2005, no pet.).  Statements that are defamatory per quod are actionable only upon allegation and proof of damages.  *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.).  Thus, the plaintiff must carry his burden of proof on both the existence of and amount of damages.  *See Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); *Peshak v. Greer*, 12 S.W.3d

421, 427 (Tex. App.–Corpus Christi 2000, no pet.).

Statements that are defamatory per se are actionable without proof of injury. *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002); *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Therefore, if the alleged statements have been classified as defamatory per se, general damages are presumed without requiring specific evidence of harm to the plaintiff's reputation. *Bentley*, 94 S.W.3d at 604 ("As a matter of law . . . [defamatory per se statements] entitle [plaintiff] to recover actual damages for injury to his reputation and for mental anguish."); *see Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.–Austin 2007, pet. denied). Texas courts have classified the following statements as defamatory per se: (1) a statement which injures a person in his office, profession, or occupation, *see Knox*, 992 S.W.2d at 50; (2) a statement which charges a person with the commission of a crime, *see Wechter*, 683 S.W.2d at 374; (3) a statement imputing sexual misconduct, *see Moore*, 166 S.W.3d at 384; and (4) a statement accusing one of having a loathsome disease. *See Bolling v. Baker*, 671 S.W.2d 559, 570 (Tex. App.–San Antonio 1984, no writ).[6]

## 2. Discussion

We begin by analyzing the publication element of Zepeda's defamation claim. As

---

[6] In his original petition, Zepeda alleged that appellees published a statement of fact that "was, defamatory, libelous and slanderous per se, was false, and defendants acted with actual malice, negligence and/or without regard to fault." Zepeda further alleged that the statement pertained to the denial of an identification badge and his subsequent dismissal from employment, which was based upon an erroneous report demonstrating that he had been convicted of a felony in El Paso. Because the alleged statement injured Zepeda in his employment and charged him with the commission of a crime, it is defamatory per se. *See Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.–Houston [14th Dist.] 1999, no pet.); *see also Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). Although the alleged statement is properly classified as defamatory per se, Zepeda must still prove that the statement is false and that appellees negligently published a false statement about him. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

previously mentioned, appellees, in their summary judgment motion, contended that Zepeda failed to prove that: (1) appellees published a false and defamatory statement; (2) with some degree of fault; (3) which referred to Zepeda; and (4) caused Zepeda to sustain injuries. In response to appellees' no-evidence motion for summary judgment, Zepeda executed an affidavit stating the following:

> Any time I had to fill out paper work that required my social security number or driver's license number, I would look at the card to make sure I was putting the right numbers on the paper. I do not have a very good memory for number sequences, so I carry these two pieces of identification with me every where [sic] I go in case I need the information.
>
> . . . .
>
> My information, including my birth date, social security number and other data, was provided to Prime Information Center, Inc. by Richard O. Gingrich, Jr. on behalf of Industrial Site Services, Inc. for an employee background check. Industrial Site Services had all pertinent information to provide accurate information to Prime Information Center. . . . The information was either erroneous when provided to Prime Information Center or erroneously entered into the computerized system for background checks used by Prime Information Center, Inc.
>
> The resulting information of the background check produced by Prime Information Center, Inc. concerning me was information about another person. According to that information, the other person had been convicted of a felony in El Paso County, Texas. Even though the information was actually about someone other than me, the information was presented by Prime Information Center, Inc. and treated by Industrial Site Services, Inc. as though the information reported accurate facts about me.
>
> I had worked for Industrial Site Services, Inc. (or its predecessor) for more than seven years. I had never been absent from work for a criminal trial in El Paso County, Texas, or to report to a probation or parole officer. Despite informing Richard O. Gingrich, Jr. that I had never been in El Paso or convicted of a felony, I was relieved of my duties as a tractor driver on May 5, 2005.
>
> . . . .
>
> Because I could get no help from anyone else, I asked the Bee

9

County [S]heriff's [O]ffice to run a background check on me. That check showed no convictions for me any where [sic]. When I presented that background check to the [sic] Mr. Gingrich, I was told I still could not enter the plant, but needed to contact Prime Information Center, Inc. to clear up the background check. He gave me a telephone number that he said was for Prime Information Center. I repeatedly called the number but could never get a live person on the telephone.

*By the time I was terminated from Industrial Site Services on May 19, 2005, everyone employed by Industrial Site Services knew about the "felony" conviction that I supposedly had. Mr. Gingrich, the only person with reason to know at Industrial Site Services, had published the information to others and those persons had further published the information to others.*

I was embarrassed and humiliated by the experience. I was out of work for several months. I was depressed. I suffered actual injury, including but not limited to pecuniary injury, loss of employment, loss of past and future earning, loss of earning capacity, loss of or damage to reputation, personal humiliation, mental and emotional anguish and suffering, and, general special and exemplary damages.

(Emphasis added.)

In his affidavit, Zepeda stated that everyone employed by Industrial knew about his alleged criminal conviction and that Gingrich had published the information to the employees at Industrial.[7] In reaching this conclusion, Zepeda apparently assumes that: (1) Gingrich was the only employee of Industrial that was provided the results of the criminal background check from Prime; and (2) by virtue of his status, Gingrich must have informed all Industrial employees of the results of Zepeda's criminal background check. We conclude that Zepeda's statements as to the publication of a defamatory statement of fact are speculative and conclusory and do not constitute competent summary judgment evidence. *See Hightower v. Saxton*, 54 S.W.3d 380, 389 (Tex. App.–Waco 2001, no pet.)

---

[7] Other than the conclusory statements in Zepeda's affidavit, the record does not contain evidence demonstrating that other employees knew about his alleged criminal conviction or that Gingrich had published the information to others.

10

("Conclusory affidavits are not enough to raise fact issues."); *see also Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (noting that affidavits consisting of nothing more than conclusions or expressions of subjective belief are not competent summary judgment proof). Besides the speculative and conclusory statements contained in his affidavit, Zepeda did not provide any additional summary judgment evidence demonstrating that appellees negligently published a defamatory statement. Consequently, Zepeda has not produced evidence creating a fact issue as to the element of publication; therefore, appellees were entitled to summary judgment as a matter of law. *See Ortega*, 97 S.W.3d at 772; *Kindred*, 650 S.W.2d at 63; *see also W. Invs., Inc v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (stating that a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which an adverse party would have had the burden of proof at trial and that if the adverse party fails to raise a genuine issue of material fact as to the element, the court must grant the motion) (citing Tex. R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002)). As such, the trial court did not err in granting appellees' summary judgment motion. We overrule Zepeda's first issue.

**B. Zepeda's Motion for Continuance and Discovery Issue**

In his second issue, Zepeda asserts that the trial court abused its discretion in granting appellees' motion for summary judgment because no discovery had taken place and he had requested additional time to conduct discovery. We disagree.

**1. Applicable Law**

All courts have inherent power to grant or deny a continuance. *McClure v. Attebury*,

20 S.W.3d 722, 729 (Tex. App.–Amarillo 1999, no pet.) (citing *Bray v. Miller*, 397 S.W.2d 103, 105 (Tex. Civ. App.–Dallas 1965, no writ)). Texas Rule of Civil Procedure 166a(i) provides that a party, after adequate time for discovery, may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense that the adverse party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). There is no specific minimum amount of time that a case must be pending before a trial court may entertain a no-evidence summary judgment motion. *See id.*; *see also McInnis v. Mallia*, No. 14-06-00354-CV, 2008 Tex. App. LEXIS 4749, at *12 (Tex. App.–Houston [14th Dist.] June 17, 2008, no pet.). The amount of time necessary to constitute an "adequate time" depends on the facts and circumstances of each case. *See, e.g., Restaurant Teams Int'l, Inc. v. MG Secs. Corp.*, 95 S.W.3d 336, 340 (Tex. App.–Dallas 2002, no pet.); *McClure*, 20 S.W.3d at 729 (concluding that adequate time had passed when a case was pending for seven months).

When a party contends that it has not had adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See* TEX. R. CIV. P. 166a(g), 251, 252; *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). The affidavit must describe the evidence sought, explain its materiality, and set forth facts showing the due diligence used to obtain the evidence. *See MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 379 (Tex. App.–Beaumont 2005, no pet.) ("The affidavit must show why the continuance is necessary; conclusory allegations are not sufficient.").

When reviewing a trial court's order denying a motion for continuance, we consider

whether the trial court committed a clear abuse of discretion on a case-by-case basis. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* Before the reviewing court will reverse the trial court's ruling, it should clearly appear from the record that the trial court has disregarded the party's rights. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986).

The Texas Supreme Court has considered the following nonexclusive factors in deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *BMC Software*, 83 S.W.3d at 800 (diligence and length of time on file); *Tenneco Inc.*, 925 S.W.2d at 647 (materiality and purpose); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995) (materiality); *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (diligence); *see Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.–Houston [1st Dist.] 2001, no pet.) (applying these factors to decide whether a trial court abused its discretion in denying a motion for continuance).

### 2. Discussion

### a. The Length of Time the Case Was on File

As previously mentioned, Zepeda first filed suit on May 3, 2006. Appellees filed their summary judgment motion on May 30, 2007. In Zepeda's verified motion for

13

continuance,[8] Zepeda noted that the suit was governed by a Level 2 discovery control plan and that discovery had ended on May 26, 2007, as the case had been set for a hearing on June 25, 2007. The trial court granted appellees' summary judgment motion and effectively denied Zepeda's motion for continuance on July 13, 2007. Therefore, more than one year had elapsed during which the parties had the opportunity to conduct discovery.

However, in her affidavit accompanying Zepeda's verified motion for continuance, Zepeda's trial counsel stated that she was diagnosed with, and was being treated for, cancer. Because of her diagnosis, she was "unable to prosecute this case for a period of about seven months." However, assuming that no discovery took place during trial counsel's treatment for cancer, Zepeda still had from May 3, 2006 to August 27, 2006, and March 30, 2007 to May 26, 2007—a period of approximately six months—to conduct discovery. *See BMC Software*, 83 S.W.3d at 800 (holding that a seven-month period of time from filing of the case to the summary judgment hearing was sufficient time for discovery); *see also Garza v. Gonzales*, No. 13-05-200-CV, 2006 Tex. App. LEXIS 9978, at *9 (Tex. App.–Corpus Christi Nov. 16, 2006, no pet.) (mem. op.) (upholding a denial of a motion for continuance when the case had been on file for nearly a year). Moreover, Zepeda noted in his verified motion for continuance that trial counsel's colleague "substituted in Court hearings and received service of Court notices and defendants' pleadings" in her absence. Therefore, it is conceivable that the substitute counsel could

---

[8] Zepeda's verified motion for continuance does not bear a file stamp from the trial court, indicating that the motion was filed. However, the motion was included in the supplemental clerk's record upon a motion filed by Zepeda to supplement the record.

14

have continued with discovery in Zepeda's case during trial counsel's unfortunate illness. Zepeda's motion is silent as to the substitute counsel's participation in the discovery process. Based on the foregoing, we conclude that Zepeda had adequate time within which to conduct discovery. *See BMC Software*, 83 S.W.3d at 800.

### b. Materiality and Purpose of the Discovery Sought and Due Diligence

Additionally, in his verified motion for continuance, Zepeda did not identify specific evidence to justify the additional time needed for discovery. Zepeda noted that "[a]lthough Defendants represent to the Court that 'an adequate time for discovery has passed,' Defendants served discovery on Plaintiff two days prior to the filing of their Motion for a No Evidence Summary Judgment" and that "Plaintiff would be unfairly prejudiced without modification of the discovery plan and additional discovery." However, on appeal, Zepeda contends that additional time for discovery would allow him to "learn how information regarding the felony conviction was obtained by Contractors Safety Council and/or Flint Hills and who else may have received information about the defamatory information that was 'solely' in Gingrich's control and which he claimed he shared with no one." This information has been at the heart of Zepeda's defamation claims since the lawsuit was originally filed; Zepeda should have foreseen that it was necessary for him to conduct discovery on this element. *See Tenneco Inc.*, 925 S.W.2d at 647; *CBI Indus., Inc.*, 907 S.W.2d at 521-22. Moreover, the record does not reflect that Zepeda filed any written discovery requests on appellees, and Zepeda did not aver that he exercised due diligence in attempting to obtain the information needed. *See BMC Software*, 83 S.W.3d at 800; *Wood Oil Distrib., Inc.*, 751 S.W.2d at 865.

Because an adequate time for discovery had passed, and because Zepeda did not specifically describe the additional discovery sought and the record does not demonstrate that Zepeda filed any written discovery requests on appellees, we cannot conclude that the trial court abused its discretion in denying Zepeda's verified motion for continuance to conduct further discovery. *See Perrotta*, 47 S.W.3d at 577 (noting that a denial of a motion for continuance based on lack of time to prepare due to personal matters and other lawsuits pending is not an abuse of discretion). We overrule Zepeda's second issue.

## IV. CONCLUSION

Having overruled both of Zepeda's issues on appeal, we affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 6th day of November, 2008.

16