

# NUMBER 13-10-00135-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VERA SULLIVAN AND RAY SULLIVAN,                          Appellants,

v.

ARANSAS COUNTY NAVIGATION DISTRICT,                          Appellee,

On appeal from the 156th District Court
of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

This is an appeal from a summary judgment rendered in favor of appellee, the Aransas County Navigation District (the "District"). Appellants, Vera Sullivan and Ray Sullivan, filed a suit for injuries allegedly sustained when Vera tripped and fell as she approached the entrance to a restroom owned and operated by the District. By a single

issue, the Sullivans contend that the trial court erred by granting summary judgment on the basis of their alleged failure to give proper notice under section 101.101 of the Texas Civil Practice and Remedies Code because the District had actual notice of the incident. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 (Vernon 2005). We reverse and remand.

## I. BACKGROUND

On January 27, 2009, the Sullivans filed suit against the District alleging that on or about January 30, 2007, Vera tripped and injured herself while entering a restroom owned and operated by the District. The Sullivans' original and subsequent amended petitions asserted that Vera "tripped as a result of a dangerous condition caused by the uneven sidewalk, the deterioration of repairs of the uneven sidewalk, and the failure of the [District] to warn of the dangerous condition." The District answered by generally denying the allegations, pleading "all the defenses and limitations of Chapter 101 of the Civil Practice & Remedies Code, the Texas Tort Claims Act and all the defenses of Chapter 75 of the Civil Practice and Remedies Code," and asserting that the trial court lacked subject-matter jurisdiction because the Sullivans failed to provide the District with notice of their claim within six months of the alleged incident.

The District filed a combined no-evidence and traditional motion for summary judgment based "on the ground that neither [Vera nor Ray Sullivan] provided timely notice of his or her claim to the District as required by the Tort Claims Act . . . ."[1] *See id.*

---

[1] Lack of pre-suit notice under the Texas Tort Claims Act is a jurisdictional requirement that is typically raised by a plea to the jurisdiction. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2010) ("Statutory prerequisites to suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, No. 08-0215,

§ 101.101(a) (providing that "[a] governmental unit is entitled to receive notice of a claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred"). The District attached excerpts of the depositions of Vera and Ray to the motion for summary judgment. In her deposition, Vera stated that she fell as she approached the restroom and hit her head on a wall when she fell.[2] After falling, Vera sat up and noticed "a lot of broken-up concrete" in the area where she had lost her balance. Vera testified that Ray approached her after she fell and that "a gentleman" also approached. Vera continued:

> There was a gentleman there that wanted to—I—I heard him ask Ray if he could call an ambulance. . . . And he called an ambulance, and then after I had been sitting there for a short while there was a man that came around the corner of the building, and he started asking Ray a bunch of questions. And he may have been, yes, someone from the [District] because he had cowboy boots on and a cowboy hat and—he just looked like maybe that's—you know, that it was—I assumed it was the county. I didn't know it was the [District]. . . . I thought it was probably county [sic].

Ray also testified that he believed that he spoke with someone who worked for the District at the time of the accident. At his deposition on June 30, 2009, Ray stated:

> [A]nd the ambulance had come, and there were a couple of fellows standing there just watching, I guess. And the—the man [Vera] described with the kind of western outfit on . . . he just kept asking kind of pertinent questions and—or questions you don't think you'd normally ask a person in that position. . . . So I figured he was somebody there to find out what happened for whoever owns the building, I guess. And at that time, I wasn't sure who owned the building, the city or county or who. But I didn't

---

2010 WL 4144590, at **1-2 (Tex. Oct. 22, 2010); *Colquitt v. Brazoria County*, No. 09-0369, 2010 WL 3813219, at *2 (Tex. Oct. 1, 2010) (per curiam). Although the District could have asserted a plea to the jurisdiction rather than a combined traditional and no-evidence motion for summary judgment, the District was not required to do so. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (recognizing that "[t]he absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as other procedural vehicles, such as a motion for summary judgment").

[2] The excerpts of Vera's deposition demonstrate that she fractured her right femur and left wrist.

know anything about the [District]. . . . But, you know, he asked me, "What happened? How did she—what happened? I said, "She fell." [Then the man asked,] "How did she fall?" I said, "Well I think she stumbled on that uneven concrete right there, and she hit the wall with her head." And he said, "Well, you taking her to a hospital?" I said "yeah." He said, "What hospital are you going to?" I said "Spohn in—in Corpus Christi," which I had never been to—or I didn't say Spohn. I said the hospital. I didn't know what the name of it was. . . . And then I quit talking to him. I figured this guy is [sic] asking way too many questions.

Ray testified that the clothing of the man with whom he spoke did not identify himself as an employee of the District.

The Sullivans filed a response to the summary judgment motion, attaching an affidavit sworn to and signed by Ray on February 17, 2010, as well as affidavits and excerpts from the depositions of two District employees—Juan Samuel Ramos and Charles Potter. Ray's affidavit stated the following, in relevant part:

6. Very soon after the fall, while I was awaiting the arrival of the ambulance, a man arrived at the scene and began to question me concerning the incident. His questions included repeatedly asking me my name and my wife's name, what had happened, whether she was hurt and what hospital she was going to. I replied by giving him our names, that we were married, that we were winter Texans visiting from Iowa, that my wife had tripped entering the restrooms on the exposed lip caused by the failed, broken and crumbled repair, that she was hurt and that we were going to the hospital in Corpus Christi. He said it was good we were going to Corpus Christi.

7. While we were waiting, my wife was bleeding profusely from the head injury and was crying out in pain. The man who asked the questions stayed at the scene until the ambulance left. His concerns were more than an innocent bystander. I can describe the man asking the questions as being an [A]nglo male, 45-55 years old, 5'10 – 5'11, medium to heavy set build, wearing casual clothing and a hat.

4

Ramos testified that Ronald Roe was the "harbor master superintendent" in January 2007, and was deceased at the time of Ramos's deposition.[3] Ramos stated that he had no personal knowledge of the accident but that the day after the accident, Roe told him that a lady had tripped and fallen near the restroom and instructed him to "alter the place where the accident occurred to make it less likely that someone would fall there."[4]

According to Ramos, Roe generally worked out of the District's offices which were located in a building near the restroom where Vera tripped and fell. Ramos described Roe as "44 or 45" years old, "about 5'10 or 5'11," a "casual" dresser, and "[b]etween medium and heavier set." Potter described Roe as "five foot, ten [inches], about 200 pounds." Potter also stated that Roe wore a hat "[e]very once in a great while" when he "was outside and it was hot," but that Roe "hardly was outside his office."

The District filed a response and attached an affidavit sworn to and signed by Potter on February 19, 2010. In his affidavit, Potter stated,

> I saw Mr. Roe virtually every work day. He never wore cowboy boots or a cowboy hat. He wore steel-toed safety shoes, which looked

---

[3] The Sullivans attached a copy of Ronald Roe's death certificate to their response to the District's motion for summary judgment. The death certificate indicates that Roe died on March 20, 2007, approximately two months after Vera's accident.

[4] Ramos's affidavit details the repairs done to the sidewalk:

> The place where the sidewalk leading to the restroom meets the slab of the restroom building had at that time an elevation change of about one-quarter inch to one-half inch due to the fact that the slab was slightly higher than the sidewalk. . . .

> To smooth out the elevation change, I had one of my employees apply concrete grout to the sidewalk at an incline where it met the restroom slab and smoothed it out so that there was a smooth transition between the sidewalk and the slab. Later, after the grout had cured, the area of the alteration was painted yellow. . . .

5

like dress shoes. He wore a hat every once in a great while—when he was outside and it was sunny and hot—and the hat he wore was not a cowboy hat.

The District also filed objections to the Sullivan's response to its summary judgment motion. In particular, the District objected to Ray's statement that the concerns of the man to whom he spoke were "more than an innocent bystander." On February 25, 2010, the trial court sustained this objection and granted the District's motion for summary judgment without specifying whether it was granting the motion on no-evidence or traditional grounds. A take-nothing judgment was entered against both of the Sullivans. This appeal ensued.

## II. STANDARDS OF REVIEW

Different standards of review apply to summary judgments granted on no-evidence and traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772. Once an appropriate motion for no-evidence summary judgment is filed, the non-movants, here the Sullivans, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment. *See* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We do not consider any evidence presented by the movant unless it creates a fact

6

question.  *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *Newkumet v. Allen*, 230 S.W.3d 518, 521 (Tex. App.–Eastland 2007, no pet.).

"Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of fact.'"  *Ortega*, 97 S.W.3d at 772 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).  Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Id.* (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).  In determining whether the non-movant has met its burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In contrast, we review the trial court's grant of a traditional motion for summary judgment de novo.  *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).  When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).  The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.

*See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

### III. APPLICABLE LAW

Governmental immunity defeats a trial court's subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). The Texas Tort Claims Act ("TTCA") waives a governmental entity's immunity from suit "to the extent of liability created by [the TTCA]." TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2005). To take advantage of this waiver, plaintiffs must notify the governmental entity of a claim within six months of the incident giving rise to the claim. *Id.* § 101.101(a); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, No. 08-0215, 2010 WL 4144590, at *1 (Tex. Oct. 22, 2010). The notice must describe the damage or injury claimed, the time and place of the incident, and the incident. TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). The purpose of the formal notice provision is "'to ensure a prompt reporting of claims to enable the [government] to investigate while facts are fresh and conditions remain substantially the same.'" *Colquitt v. Brazoria*

*County*, No. 09-0369, 2010 WL 3813219, at *3 (Tex. Oct. 1, 2010) (per curiam) (quoting *City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex. 1981)). Section 101.101(c) provides an exception to the formal notice requirement if the governmental unit has "actual notice" that "the claimant has received some injury." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c).

In *Cathey v. Booth*, the Texas Supreme Court held that actual notice to a governmental entity requires knowledge of: (1) a death, injury, or property damage; (2) the governmental entity's alleged fault or producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). A governmental entity must have knowledge of "the information it is entitled to be given under [section] 101.101(a) and a subjective awareness that its fault produced or contributed to the claimed injury." *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004). Subjective awareness is required because the governmental entity does not have the same incentive to investigate a matter if it is not subjectively aware of its fault or liability. *Id.* The determination of whether a governmental entity received actual notice is a question of fact when the evidence is disputed, but it may be determined as a matter of law where the evidence is insufficient to raise a fact issue. *Id.*; *Alvarado v. City of Lubbock*, 685 S.W.2d 646, 649 (Tex. 1985); *Lorig v. City of Mission*, 629 S.W.2d 699, 701 (Tex. 1982).

## IV. ANALYSIS

9

By their sole issue, the Sullivans contend that the trial court erred by granting summary judgment in favor of the District because, within six months of the incident, the District had actual notice that the Sullivans had sustained injuries.[5] Specifically, the Sullivans assert that Ray's description of the man to whom he spoke after Vera's January 27, 2007 fall matched the description of Roe, the District's harbormaster superintendent, and that notice to Roe may be imputed on the District. Because the trial court granted the District's hybrid motion for summary judgment without specifying whether it was granting the motion on no-evidence or traditional grounds, we begin by reviewing the summary judgment under the standards of rule 166a(i). *See Ridgway*, 135 S.W.3d at 600 (providing that when a party moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the trial court's summary judgment under the standards of rule 166a(i)").

## A.    No-Evidence Motion for Summary Judgment

"If an agent or representative receives notice of the incident and had a duty to gather facts and report, actual notice can be imputed to the governmental entity." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, No. 04-09-00579-CV, 2010 WL 3406146, at *4 (Tex. App.–San Antonio Aug. 31, 2010, no pet.) (citing *Tex. Tech Univ. Health Sci. Ctr. v. Lucero*, 234 S.W.3d 158, 163, 168 (Tex. App.–El Paso 2007, pet. denied)). Moreover, "[a]ctual notice is not limited to a particular official or employee of a government entity, such as a director of risk management." *Id.* (citing *Dinh v. Harris*

---

[5] The Sullivans concede that they did not provide formal notice to the District within six months of the incident giving rise to their claims; thus, our review focuses only on actual notice under section 101.101(c). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) (Vernon 2005).

*County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.–Houston [1st Dist.] 1995, writ dism'd w.o.j.)). The Sullivans' supporting evidence filed in response to the District's hybrid motion for summary judgment established that in January 2007, Roe was the "harbor master superintendent" in charge of the "overall planning and management, construction and maintenance activities for [the District]; supervising all district personnel and operations; and operating and directing the operation of various types of . . . work projects and equipment engaged in the construction, repair and maintenance of [the District] projects . . . ." Excerpts from the deposition testimony of Ramos, a District employee under Roe's supervision at the time of Vera's alleged fall, describe Roe as "44 or 45" years old, "about 5'10 or 5'11," a "casual" dresser, and "[b]etween medium and heavier set." According to Ramos, Roe generally worked out of the District's offices which were located in a building near the restroom where Vera allegedly tripped and fell. Excerpts from the deposition of Potter, another District employee, reveal that Roe wore a hat "[e]very once in a great while" when he "was outside and it was hot," but that Roe "hardly was outside his office." Ramos stated in his deposition that the day after Vera's alleged fall, Roe told him that a lady had tripped and fallen near the restroom and instructed him to repair the area where the lady had fallen.

Ray's affidavit details a conversation that he had at the time of the alleged accident.[6] Ray attested that soon after Vera's fall, he was approached by "an [A]nglo

---

[6] For the first time on appeal, the District objects to the form of Ray Sullivan's affidavit on the basis that it is a "sham affidavit" and should not have been considered by the trial court as summary judgment evidence because it contradicts his earlier deposition testimony. *See Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.–Dallas 2006, no pet.) (providing that an objection that an

11

male, 45-55 years old, 5'10-5'11, medium to heavy set build, wearing casual clothing and a hat." Ray gave his name and Vera's name to the man, told him that they were winter Texans from Iowa, and informed him that Vera tripped over a broken and crumbling area of pavement as she entered the restroom. While they spoke, Vera "was bleeding profusely from [a] head injury and was crying out in pain." Ray told the man that Vera "was hurt" and was going to be transported to a Corpus Christi hospital.

We conclude that the Sullivans presented sufficient evidence to raise a genuine issue of material fact by presenting evidence that would enable reasonable and fair-minded people to differ in their conclusions as to whether the District, through Roe, had knowledge: (1) of Vera's injury; (2) that, because of the condition of the sidewalk, the District was at fault; and (3) of the identities of Vera and Ray. *See Ortega*, 97 S.W.3d at 772; *see also Cathey*, 900 S.W.2d at 341. Because there is a genuine issue of material fact as to whether the District had actual notice, the trial court improperly granted summary judgment if it did so on no-evidence grounds.

## B.    Traditional Motion for Summary Judgment

We next turn to the District's traditional motion for summary judgment and determine whether the District met its burden to prove that no genuine issue of material fact exists as to actual notice and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Clear Creek Basin*

---

"affidavit is a sham affidavit because it contradicts [the affiant's] earlier deposition testimony is an objection complaining to a defect in form of his affidavit"). "Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." TEX. R. CIV. P. 166a(f). Thus, the District has not preserved this argument for appellate review. *Hogan*, 197 S.W.3d at 883; *see also* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion . . . .").

*Auth.*, 589 S.W.2d at 678.  As evidence, the District presented:  (1) excerpts from Vera's deposition testimony stating that, at the time of her accident, Ray spoke to a man that "may have been . . . someone from [the District] because he had cowboy boots on and a cowboy hat"; (2) excerpts from Ray's deposition testimony stating that he "figured" that the man he spoke to and whom Vera "described with the kind of western outfit on" was "there to find out what happened for whoever own[ed] the building" that housed the restroom where Vera had fallen; (3) excerpts from Ray's deposition testimony stating that he "quit talking" to the unidentified man after telling him that Vera was being taken to the hospital because she had "stumbled on that uneven concrete right there" and "hit the wall with her head"; (4) excerpts from Potter's affidavit stating that Roe "never wore cowboy boots or a cowboy hat" and, instead, "wore steel-toed safety shoes, which looked like dress shoes."

Ray's affidavit did not allege that the man to whom he spoke wore cowboy boots or a cowboy hat; instead, Ray's description of the man was similar to Ramos's and Potter's description of Roe.  Where, as here, the evidence is disputed, the determination of whether the District received actual notice is a question of fact.  *See Alvarado*, 685 S.W.2d at 649; *Lorig*, 629 S.W.2d at 701.  Thus, because there is conflicting evidence as to whether, through Roe, the District had actual knowledge of the Sullivans' claims, the District has failed to establish its right to summary judgment as a matter of law.  *See Alvarado*, 685 S.W.2d at 649 (concluding that summary judgment was precluded where a fact question existed as to whether or not a governmental entity had actual notice of appellant's injury); *Lorig*, 629 S.W.2d at 701 (holding that "the trial court erred in

granting the [governmental entity's] motion for summary judgment, because there existed material issues of fact including whether the [governmental entity] received actual notice of the plaintiff's injury"). Accordingly, we conclude that the trial court improperly granted summary judgment if it did so on traditional grounds. We sustain the Sullivans' sole issue.[7]

## V. CONCLUSION

Based on the foregoing, we reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this memorandum opinion.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
6th day of January, 2011.

---

[7] The District also asserts that Ray claims loss of consortium and is "apparently making a bystander claim." The District argues, without any citation to authority, *see* TEX. R. APP. P. 38.1(i), that even if it had actual notice of Vera's injuries, it was not on notice of Ray's claims, and the trial court's summary judgment against Ray's claims was proper. A loss of consortium claim is derivative of the other spouse's personal injury. *See Rosenzweig v. Dallas Area Rapid Transit*, 841 S.W.2d 897, 898 (Tex. App.–Dallas 1992, writ denied). Thus, because a fact issue as to whether the District received actual notice of Vera's injury exists, summary judgment as to Ray's loss of consortium claim would be improper. Moreover, based on our review of the Sullivans' petition, it does not appear that Ray has raised a bystander claim. However, to the extent that such a bystander claim is raised, summary judgment as to it would be improper because "[a]lthough bystander claims are considered independent and not derivative . . . the bystander plaintiff cannot recover unless the injured person can recover." *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 144 (Tex. App.–Houston [14th Dist.] 2001, pet. denied).

14