NUMBER 13-09-00177-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

JOSEPH ANTHONY RIVAS,                                                   
Appellant,

 

v.

 

MPII, INC. D/B/A
MISSION PARK

FUNERAL CHAPELS SOUTH,                                              
 Appellee.

                                                                                                                     
  

 

On appeal from the 57th
District Court 

of Bexar County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Perkes 

Memorandum Opinion by
Justice Rodriguez

 

This is an appeal from a final summary
judgment granted in favor of appellee MPII, Inc. d/b/a Mission Park Funeral
Chapels South (Mission Park) and against appellant Joseph Anthony Rivas.  The
sole issue is whether the trial court erred in granting Mission Park's motion
for summary judgment.  We reverse and remand.








I. 
Background[1]

It is undisputed that this is a premises
liability case.  The suit arose when Rivas, while acting as a pallbearer at a
burial service on Mission Park's premises, fell into a hole at the grave site. 
Rivas filed suit, and Mission Park subsequently filed motions for traditional
and no-evidence summary judgment.  See Tex.
R. Civ. P. 166a(c), (i).  The basis for its traditional motion was that
Mission Park negated, as a matter of law, the first element of Rivas's cause of
action—that Mission Park had knowledge of the complained-of condition on its
premises.  The basis for its no-evidence motion was that Rivas had no evidence
that Mission Park had knowledge of an unreasonably dangerous condition.  After
hearing argument on the motions, the trial court granted Mission Park summary
judgment without stating the grounds.  This appeal followed.[2]

II. 
Standard of Review

The standard of review for the granting of a motion
for summary judgment is determined by whether the motion was brought on no‑evidence
or traditional grounds.  See Tex.
R. Civ. P. 166a(c), (i); see also Ortega v. City Nat'l Bank, 97
S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003, no pet.) (op. on
reh'g).  A no‑evidence summary judgment is equivalent to a pretrial
directed verdict, and this Court applies the same legal sufficiency standard on
review.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Ortega,
97 S.W.3d at 772; Moore v. K-Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.–San Antonio 1998, writ denied).  Such a summary judgment motion should be
granted if there is no evidence of at least one essential element of the
plaintiff's claim.  Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008)
(per curiam).  The burden of producing evidence is entirely on the non‑movant;
the movant has no burden to attach any evidence to the motion, and if the non‑movant
produces evidence to raise a genuine issue of material fact, summary judgment
is improper.  Tex. R. Civ. P.
166a(i).

All that is required of the non‑movant is to
produce a scintilla of probative evidence to raise a genuine issue of material
fact on the challenged element.  Forbes, Inc. v. Granada Biosciences, Inc.,
124 S.W.3d 167, 172 (Tex. 2003); Ortega, 97 S.W.3d at 772.  "Less
than a scintilla of evidence exists when the evidence is 'so weak as to do no
more than create a mere surmise or suspicion of a fact.'"  Ortega,
97 S.W.3d at 772 (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983)); see Forbes, 124 S.W.3d at 172.  Conversely, more than a
scintilla of evidence exists when reasonable and fair-minded individuals could
differ in their conclusions.  Forbes, 124 S.W.3d at 172; Ortega,
97 S.W.3d at 772 (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)).  In determining whether the non‑movant has produced more
than a scintilla of evidence, we review the evidence in the light most
favorable to the non‑movant, crediting such evidence if reasonable jurors
could and disregarding contrary evidence unless reasonable jurors could not.  Tamez,
206 S.W.3d at 582; City of Keller v. Wilson, 168 S.W.3d 802, 825, 827
(Tex. 2005) (noting that review of a "no‑evidence" motion for
summary judgment is effectively restricted to the evidence contrary to the
motion); Ortega, 97 S.W.3d at 772.

We review the trial court's granting of a traditional
motion for summary judgment de novo.  See Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Branton v. Wood, 100
S.W.3d 645, 646 (Tex. App.BCorpus Christi 2003, no pet.).  When
reviewing a traditional summary judgment, we must determine whether the movant
met his burden to establish that no genuine issue of material fact exists and
that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The movant bears
the burden of proof in a traditional motion for summary judgment, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  See Sw. Elec. Power Co., 73 S.W.3d at 215.  We take
as true all evidence favorable to the non-movant, and we indulge every
reasonable inference and resolve any doubts in the non-movant's favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).








We will affirm a traditional summary judgment only if
the record establishes that the movant conclusively proved its defense as a
matter of law or if the movant negated at least one essential element of the
plaintiff's cause of action.  IHS Cedars Treatment Ctr. of DeSoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); Am. Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Clear Creek Basin Auth.,
589 S.W.2d at 678.  A matter is conclusively established if reasonable people
could not differ as to the conclusion to be drawn from the evidence.  City
of Keller, 168 S.W.3d at 816.

When, as in the present case, an order
granting summary judgment does not state the specific grounds on which summary
judgment was granted, a court will uphold it on any ground presented in the
motion.  Cincinnati Life Ins. Co. v. Cates, 947 S.W.2d 608, 610
(Tex. 1997).  Moreover, when a party moves for summary judgment under both rules
166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review
the trial court's judgment under the standards of rule 166a(i).  Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellant fails to
produce more than a scintilla of evidence under that burden, then there is no
need to analyze whether appellee's summary judgment proof satisfies the rule
166a(c) burden.  Id.

III. 
Applicable Law

In order to establish a premises
liability claim, a plaintiff must prove the following four elements:  (1) the
owner or occupier had actual or constructive knowledge of a condition on the
premises; (2) the condition posed an unreasonable risk of harm; (3) the owner
or occupier did not exercise reasonable care to reduce or eliminate the risk;
and (4) the owner or occupier's failure to use such care proximately caused the
plaintiff's injury.  Wal-Mart Stores v. Reece, 81 S.W.3d at 812, 814
(Tex. 2002); CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 2000). 
The challenged element in this case is the first element— knowledge.

Rivas does not dispute that there is no
evidence that Mission Park had actual knowledge, i.e., that Mission Park
created or knew of the condition on the premises.  Instead, Rivas relies on
constructive knowledge, which requires proof that Mission Park had a reasonable
opportunity to discover the defect.  Reece, 81 S.W.3d at 813; CMH
Homes, Inc., 15 S.W.3d at 101-02 ("Daenen would be entitled to recover
if he presented evidence that CMH actually knew that the platform and step unit
had become unstable or if a reasonable inspection would have revealed that the
unit was no longer safe."); Corbin v. Safeway Stores, Inc., 648 S.W.2d
292, 295 (Tex. 1983) ("The occupier is considered to have constructive knowledge
of any premises defects or other dangerous conditions that a reasonably careful
inspection would reveal.").

As the supreme court explained in Wal-Mart
Stores, Inc. v. Spates, the question of constructive knowledge "requires
analyzing the combination of proximity, conspicuity, and longevity."  186
S.W.3d 566, 567-68 (Tex. 2006) (per curiam) (citing Reese, 81 S.W.3d at
816).  "If the dangerous condition is conspicuous as, for example, a large
puddle of dark liquid on a light floor would likely be, then an employee's
proximity to the condition might shorten the time in which a jury could find
that the premises owner should reasonably have discovered it."  Id.  "Similarly,
if an employee was in close proximity to a less conspicuous hazard for a
continuous and significant period of time, that too could affect the jury's
consideration of whether the premises owner should have become aware of the
dangerous condition."  Id.  In addition, “[w]ithout some temporal
evidence, there is no basis upon which the fact[-]finder can reasonably assess
the opportunity the premises owner had to discover the dangerous condition."
 Reese, 81 S.W.3d at 816.  Moreover, "when circumstantial evidence
is relied upon to prove constructive notice[, as in this case,] the evidence
must establish that it is more likely than not that the dangerous condition
existed long enough to give the proprietor a reasonable opportunity to discover
the condition."  Wal-mart Stores, Inc. v. Gonzalez, 968 S.W.2d 936,
936 (Tex. 1998).  "[M]eager circumstantial evidence from which equally
plausible but opposite inferences may be drawn is speculative and thus legally
insufficient to support a finding."  Id.

IV. 
Discussion

A.  No-Evidence Summary Judgment Motion








By his sole issue on appeal, Rivas
asserts, in response to the no-evidence summary judgment, that he produced more
than a scintilla of probative evidence to raise a genuine issue of material
fact regarding Mission Park's constructive knowledge of the hole into which he
fell.  See Forbes, 124 S.W.3d at 172; Ortega, 97 S.W.3d
at 772.  He argues that reasonable minds could conclude that a reasonably
careful inspection would have revealed the hole, and because the hole was left
in such an area, reasonable minds could further conclude Mission Park failed to
conduct a reasonably careful inspection of the premises in question.  Rivas
bases
his argument on evidence which he contends establishes the following:  (1)
the size and location of the hole should have led to its discovery; (2) Mission
Park employees should have discovered the hole during the construction of the
grave; or (3) Mission Park employees should have discovered the hole while
laying Astroturf over the grave site.  See Keetch v. The Kroger Co.,
845 S.W.2d 262, 264-66 (Tex. 1992) (explaining that the fact that the premises
owner creates a condition may support an inference of knowledge, but alone is
insufficient to prove knowledge as a matter of law; an inference of knowledge
cannot be made as a matter of law unless knowledge is uncontroverted; and given
such an inference, it is up to the fact-finder to determine whether the owner
or occupier knew or should have known of the condition).  In response, Mission
Park contends that these assertions are logical only if the hole existed for a
significant period prior to the burial service and that Rivas offered no
evidence to show that this was the case.  Therefore, Mission Park asserts that
Rivas has offered less than a scintilla of evidence to establish constructive
knowledge, and the trial court properly granted its no-evidence motion for
summary judgment.

In
support of his argument, Rivas refers this Court to excerpts of his deposition
testimony and the deposition testimony of Andy Campa, Mission Park's employee
of twenty-four years and its foreman at the time of the incident, which were
attached to or incorporated into Rivas's response to Mission Park's motion for
summary judgment.  Specifically, Rivas testified at his deposition that he
"stepped on the carpet and went straight down and it wasn't into the
grave.  It was down—the carpet was covering the hole that I went into." 
Rivas explained that he took one step onto the Astroturf surrounding the frame
and his left foot "went down."  As illustrated by a diagram drawn by
Rivas and attached as a deposition exhibit, the hole was located alongside the
grave.  Rivas described the size of the hole as big "[e]nough for [his]
whole leg and hip to go into it" and testified that his leg went down,
"all the way to [his] hip," right beneath his waistline.  When asked
whether the hole was separate from or part of the actual grave, Rivas
testified, "I couldn't say.  The carpet was covering everything."

Campa
testified that his responsibilities included "making sure everything gets
done, take care of my guys, tell them what to do, what not to do, dig my
graves."  He also gave a detailed explanation of Mission Park's procedures
for digging graves, which included going to the proposed grave location, laying
measuring tape, marking the grave with pins, and digging the grave with a
backhoe.  Campa explained that he dug the graves one day or two days ahead of
time, and after a grave is dug, he "clean[s] the area out, make[s] sure
there's no limbs, nothing—nothing's wrong around there for when the service
gets there."  His final step is to "lay out boards, and then … put
plywood over the grave."  Chapa also provided the following answers at his
deposition:

Q.        Okay. 
And do you typically have some carpet that you lay down or something like that?

 

A.        Well, yeah, when we get ready to have
the service.

 

Q.        Uh-huh.  So that would be something
you normally do?

 

A.        We do it in all our services.

 

This summary judgment evidence shows
that a hole, large enough for Rivas's "leg and hip to go into,"
existed alongside the grave and Rivas fell into it while providing his services
as a pallbearer; that a grave is dug one or two days in advance of the service
and the area is cleaned out to make "sure there's no limbs,
nothing—nothing's wrong around for when the service gets there"; that
sometime after the grave is dug and before the service, carpet is put into
place as part of the burial service preparations; and that the hole, in this
case, was covered by Astroturf when Rivas fell into it.

To conclude Mission Park had
constructive knowledge of the hole, jurors would have to conclude that the employees
should have noticed the hole, in other words, that Mission Park had a
reasonable opportunity to discover the defect.  Reviewing the evidence in the light
most favorable to Rivas, crediting such evidence if reasonable jurors could,
and disregarding contrary evidence unless reasonable jurors could not, see
Tamez, 206 S.W.3d at 582; City of Keller, 168 S.W.3d at 825, 827;
Ortega, 97 S.W.3d at 772, this summary judgment
evidence indicates that Mission Park employees were at the grave site in
question, preparing the grave a day or two before the service, and covering the
grave site with Astroturf after the grave was opened but prior to the service. 


As set out earlier, the question of
constructive knowledge "requires analyzing the combination of proximity,
conspicuity, and longevity."  Spates, 186 S.W.3d at 567-68 (citing Reese,
81 S.W.3d at 816).  In this case, a jury could reasonably find that Mission
Park's employees' proximity to the condition during the preparation of the
grave and set up of the site for the burial service within one day or, at most,
two days of the burial service support a conclusion that Mission Park should
reasonably have discovered the large hole into which Rivas fell.  See id. 
Moreover, based on circumstantial evidence that the hole, concealed by
Astroturf and located right beside the grave, was big enough for Rivas's whole
leg and hip to go into, a jury could reasonably infer that it is more likely
than not that the dangerous condition existed long enough to give Mission Park
a reasonable opportunity to discover the condition.  See Gonzalez, 968
S.W.2d at 936.  This evidence is more than meager circumstantial evidence.[3] 
See id.  We cannot conclude that any equally plausible but opposite inference––for
example, that this large hole located beside the grave existed only after
Mission Park completed its preparations for the burial on the day of or the day
before the service—may be drawn from the evidence before us in this no-evidence
summary judgment review.  See id.  Furthermore, had it been uncovered,
the large hole would have been conspicuous.  And even covered and less
conspicuous, the employees were present, in close proximity, for a continuous
and significant period as they prepared the grave site for the burial service,
and this could affect the jury's consideration of whether Mission Park should
have become aware of the dangerous condition.  See Spates, 186 S.W.3d at
567-68 (citing Reese, 81 S.W.3d at 816).

Therefore, applying the summary judgment
standard of reviewing the evidence in the light most favorable to the
non-movant and disregarding all evidence and inferences to the contrary, see
Tamez, 206 S.W.3d at
582, based
on the facts and circumstances presented in this case, we conclude that
the evidence is more than a scintilla of probative evidence to raise a genuine
issue of material fact as to Mission Park's constructive knowledge of the
hole.  See Forbes, 124 S.W.3d at 172; Ortega, 97 S.W.3d at 772. 
Reasonable and fair-minded individuals could differ in their conclusions
regarding whether the hole had existed long enough for Mission Park to have
discovered it or whether it existed long enough to give Mission Park
a reasonable opportunity to discover and remedy it based on the size
of the hole, its location, and the work done by Mission Park's
employees either the day of or the day before the burial service.  See Forbes, 124 S.W.3d at
172;
see also CMH Homes, 15 S.W.3d at 101; Reece, 81 S.W.3d
at 816.  Thus, we conclude that the trial court erred in
granting Mission Park's no-evidence motion for summary judgment.

B.  Traditional Summary Judgment Motion[4]

            Rivas contends that the trial court also erred in granting
Mission Park's traditional motion for summary judgment because Mission Park
failed to conclusively negate the element of knowledge as a matter of law.  See
Mason, 143 S.W.3d at 798.  In response, Mission Park argues that the
evidence established it had no notice or knowledge of any allegedly
unreasonably dangerous condition on the premises, and, thus, it negated the
knowledge element of Rivas's premises liability claim.  The evidence supporting
Mission Park's motion for summary judgment includes the deposition testimony of
Rivas, Campa, William R. Deuvall Jr., Mission Park's funeral director and
embalmer since 1983, and Michael Hoffman Jr., a ten-year Mission Park employee
and, at the time of his deposition, its general manager.

In addition to
Rivas's testimony set out above, Rivas testified that he had "no idea if
[Mission Park] knew [of the existence of the hole] or not."  Rivas also
agreed that he did not know what was done to inspect or maintain the area in
question and did not have any facts in his possession about what Mission Park
did or did not do.  Finally, Rivas testified that there was nothing about the
Astroturf which led him to think there might be a hole under the carpet.

Campa testified
regarding grave site preparation generally, although he did not recall digging
this particular grave.  Specifically, Campa testified that he would have opened
the grave, cleaned out the area, laid out two boards on each side and one on
each end of the grave, and placed plywood over the grave "so nobody
w[ould] fall in."  Campa also testified that his crews set out the tents
and chairs.  Campa also agreed that if the boards and the plywood are laid out
correctly, nobody will fall into a grave.

Deuvall testified
that, on the day of the funeral, he was in charge of the service.  Deuvall saw
the pallbearers carrying the casket but did not witness the incident itself.  A
funeral attendee told him that someone had fallen.  According to his testimony,
Deuvall prepared a written report stating that Rivas apparently stepped too
close to the grave.  Deuvall explained that he did not undertake an
investigation because he heard that Rivas was okay.  He also testified that he
did not recall whether there was plywood covering the grave opening or whether
any plywood or boards were removed following the service.  Deuvall stated that
he did not recall being there when they lifted up the carpet and did not recall
whether there was any kind of indentation or hole next to the grave site.

Finally, Hoffman
testified that he did not work the funeral and, therefore, did not witness the
incident.  Hoffman stated Deuvall provided a verbal report, not the written
report referenced above.  Deuvall told Hoffman that he had not witnessed the
incident but that Rivas had apparently fallen and that Deuvall approached Rivas
"following the commotion," asked him if he was okay, and was told he
was fine.  According to Hoffman, Deuvall did not specify whether Rivas had
fallen into the grave or had just fallen carrying the casket and did not report
that the carpet on which Rivas was walking had caved in.

When asked to
describe a grave site preparation, Hoffman explained that "[t]he grave is
marked, the site is checked, the site is checked again, the grave is pinned
open and prepared" meaning that the grave is measured, opened, covered
with plywood, and bordered with boards.  Hoffman testified that the plywood is
removed when the lowering device is set or placed on the boards that boarder
the grave.  According to Hoffman, carpeting is put down around the edge of the
grave for aesthetic purposes.

Hoffman testified
that he knew Rivas "did not fall into the grave" and explained that
"[y]ou would have to go out of your way to go into a grave once
everything's set," and "[i]t'd be near impossible to do, step inside
of [the lowering device]."  Hoffman also testified that it is impossible
to dig a grave too big because every grave site is opened forty inches to
accommodate the lowering device.  In twenty years, Hoffman has never witnessed,
or even heard of, anyone dropping down when he steps on the carpet.  He agreed
that Mission Park's employees should not leave an open hole in preparing a
grave site and cover it with carpet, and he did not "see any way the
carpet could give way or—into a hole.  The lowering device itself is way
outside the measurements of the opening of the grave."

While this
evidence sets out how a grave site is prepared and how it is unlikely that
someone would step over a lowering device and fall into a grave prepared in
this manner, it is unrelated to whether Mission Park knew or had reason to know
about the alleged grave site defect at issue in this case.  Furthermore,
Deuvall's report of the incident, whether written or verbal, provides no
evidence that would support a conclusion that Mission Park had no constructive
knowledge of the alleged defect.  The referenced written report acknowledged
that Rivas apparently stepped too close to the grave and fell, and Deuvall's
verbal report to Hoffman did not specify how Rivas fell.  And no further
investigation was undertaken because Rivas told Deuvall that he was okay. 
Finally, although Rivas testified that he had "no idea if [Mission Park]
knew [of the existence of the hole] or not" and that there was nothing
about the Astroturf which led him to think there might be a hole under the
carpet, this does not establish that Mission Park's employees could not have,
upon reasonable inspection, detected a hole earlier.  The foregoing evidence,
at most, is relevant to Mission Park's actual knowledge of the hole; it is not
evidence that conclusively negates Mission Park's constructive knowledge, which
is the relevant inquiry in this case.

Therefore, taking as true all evidence favorable to
Rivas and indulging every reasonable inference and resolving all doubts in Rivas's
favor, see Valence Operating Co., 164 S.W.3d at 661, we conclude that Mission
Park failed to carry its traditional summary judgment burden of conclusively
negating the knowledge element of Rivas's premises liability claim.  See Mason,
143 S.W.3d at 798; Grinnell, 951 S.W.2d at 425; Clear Creek Basin
Auth., 589 S.W.2d at 678.  We cannot conclude that the evidence
established as a matter of law that Mission Park had no notice or knowledge of
any allegedly unreasonably dangerous condition on the premises, as it argues. 
Based on the evidence, reasonable people could differ as to their conclusions
regarding whether Mission Park had constructive knowledge; whether it had a
reasonable opportunity to discover the defect.  See City of Keller, 168
S.W.3d at 816; see also Reece, 81
S.W.3d at 813.  We thus conclude that the trial court also erred in granting Mission
Park's traditional motion for summary judgment.

Accordingly, we
sustain Rivas's sole issue on appeal.








IV.       Conclusion

            We
reverse the trial court's order granting Mission Park's no-evidence and
traditional motions for summary judgment and remand for proceedings consistent
with this opinion.

 

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Dissenting
Memorandum Opinion by Justice Perkes.

 

Delivered
and filed the 

24th
day of March, 2011.









[1] All issues of law presented by this
case are well settled, and the parties are familiar with the facts.  Therefore,
we will not recite the law or the facts in this memorandum opinion, except as
necessary to advise the parties of the Court's decision and the basic reasons
for it.  See Tex. R. App. P. 47.4.





[2] The case is before
this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant
to an order issued by the Supreme Court of Texas.  See Tex. Gov't Code Ann. § 73.001 (Vernon 2005).





[3] The dissent correctly notes that we
have not considered evidence regarding the possible occurrence of a cave-in. 
We need not do so because the favorable evidence is more than meager
circumstantial evidence.  See City of Keller, 168 S.W.3d 802, 814 (Tex.
2005) (noting that, under the no-evidence standard of review, “when the
circumstantial evidence of a vital fact is meager, a reviewing court must
consider not just favorable but all the circumstantial evidence, and competing
inferences as well”).  Furthermore, even were we to have concluded that the
circumstantial evidence was meager, we would still not agree with the
conclusion reached by the dissent, that the following deposition testimony is
consistent with an equally plausible but opposite inference that the hole
resulted from a cave-in and came into existence the moment Rivas stepped on the
Astroturf:

 

Q:                     And are you certain that it was a
hole that you fell into?

 

A. [Rivas]          What could it have been?  I have no
idea.

 

Q.                     I'm asking you, sir.

 

A.                     Oh, you're asking me.  I fell into a
hole.  I have no idea what it was.

 

Q.                     And
do you have any facts which suggest that Mission Park knew of the existence of
that hole?

 

A.                     I have no idea if they knew it or
not.

 

Q.                     Do you have–

 

A.                     I would suggest no, but if caved in
or the hole–how did the hole exist?

 

Q.                     If
the hole caved in, as you've just said, how is that something that could have
been detected by the naked eye?

 

A.                     It couldn't have been.

 

Q.                     And
so if the hole caved in, as you just suggested, how could Mission Park have
known to look for a hole that was going to cave in?

 

A.                     Unless it caved in earlier and they
covered it up.

 

Instead,
this evidence supports the conclusion that Rivas's summary judgment evidence is
more than meager circumstantial evidence and that a jury could reasonably infer
that it is more likely than not that the dangerous condition existed long
enough to give Mission Park a reasonable opportunity to discover the
condition.  See Wal-mart Stores, Inc. v. Gonzalez, 968 S.W.2d 936, 936
(Tex. 1998).

 





[4] Having concluded that Rivas produced
more than a scintilla of evidence under the rule 166a(i) burden, we next
analyze whether Mission Park's summary judgment proof satisfies the rule 166a(c)
burden.  See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex.
2004).